Fernando SIERRA, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 582, 2007.

Supreme Court of Delaware.

Submitted: Aug. 20, 2008.
Decided: Oct. 6, 2008.

Michael W. Modica, Esquire, Wilmington, DE, for appellant.

Paul R. Wallace, Esquire and Gregory E. Smith, Esquire, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS and RIDGELY, Justices, and NOBLE, Vice Chancellor,[1] constituting the Court en Banc.

HOLLAND, Justice:

The defendant-appellant, Fernando Sierra ("Sierra"), appeals from the Superior Court's denial of his motion to suppress evidence and from his subsequent convictions of Trafficking in Cocaine, Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, Possession of Drug Paraphernalia, Use of a Dwelling for Keeping Controlled Substances, Possession of a Deadly Weapon by a Person Prohibited, and Possession of Ammunition by a Person Prohibited.

On appeal, Sierra claims that the trial judge erred in denying his suppression motion because the warrantless administrative search of his home by Probation and Parole officers was not supported by reasonable suspicion. The record supports Sierra's assertion. Accordingly, the judgments of the Superior Court must be reversed.

---

1. Sitting by designation pursuant to Del.    Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

## Facts

As a result of an earlier conviction for Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, Sierra was on Level IV home confinement. During the afternoon of February 5, 2007, Supervisory Probation Officer Patrick Cronin ("Cronin") received information from an employee of the Department of Justice ("DOJ"), who was never identified, that Sierra possessed drugs in his residence. The DOJ employee, in turn, had received that information from another person whose identity remained undisclosed (the Confidential Informant, "C.I."). Cronin testified that the C.I.'s identity was never communicated to him and that he did not know whether the C.I. was "past proven reliable."

Following that conversation, Probation Officer Jeanette Lingafelt ("Lingafelt") completed an arrest and search checklist, as required by Probation and Parole Procedure 7.19.[2] The checklist, which was prepared by Lingafelt and approved by Cronin (as the supervisor),[3] indicated as follows:

Sufficient reason to believe the offender possesses contraband. (yes)

Sufficient reason to believe the offender is in violation of his/her probation or parole. (yes)

Information from a reliable informant indicating offender possesses contraband or is violating the law. (yes)

Information from the informant is corroborated. (no)

Approval obtained from a Supervisor, Manager, or Director. (yes)

Later that day, Lingafelt and two other probation and parole officers conducted an administrative search of Sierra's house, which resulted in the recovery of a handgun, ammunition and more than 400 grams of cocaine. Sierra was arrested that day and was indicted on March 5, 2007. On May 21, 2007, Sierra moved to dismiss the indictment, to compel disclosure of the C.I.'s identity and to suppress the evidence obtained as a result of the allegedly unlawful administrative search of his home, as well as certain statements Sierra made to an officer during the search.

On or about July 1, 2007, the Superior Court held a *Flowers* hearing.[4] After an *in camera* interview of the C.I., the trial judge denied Sierra's motion to disclose the C.I.'s identity. Later, the same Superior Court judge held an evidentiary hearing on Sierra's motion to suppress. At the suppression hearing, "[t]he State presented testimony from Officer Cronin, the supervising probation officer, and Officer Hunter, one of the probation officer[s] involved in the search. [Sierra] elected not to present any evidence."[5]

Sierra requested that the evidence obtained as a result of the allegedly unlawful administrative search of his home and certain statements he made to an officer during the search be suppressed. Both motions were denied. This appeal involves only the denial of Sierra's motion to sup-

2. *See* Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19, §§ VI.A.6, VI.E (amended effective June 5, 2001).

3. The record does not reveal why Lingafelt completed the checklist when the DOJ employee conveyed the tip directly to Supervisory Officer Cronin. After he approved the administrative search, but before the search was

executed, Cronin notified his manager of his decision to conduct the search.

4. *State v. Flowers*, 316 A.2d 564, 568 (Del.Super.1973).

5. *State v. Sierra*, I.D. No. 0702003676, at 2, 2007 WL 5194085 (Del.Super., Aug. 3, 2007).

press the evidence obtained during the administrative search of his home.

After a stipulated non-jury trial, the Superior Court found Sierra guilty of Trafficking in Cocaine, Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, Possession of Drug Paraphernalia, Use of a Dwelling for Keeping Controlled Substances, Possession of a Deadly Weapon by a Person Prohibited, and Possession of Ammunition by a Person Prohibited. The trial judge subsequently granted the State's motion to declare Sierra a habitual offender. Sierra was sentenced on October 11, 2007, to a total of twenty-four years of imprisonment, followed by probation.

### Standard of Review

■ Sierra claims that the Superior Court erred in denying his motion to suppress the evidence found as a result of the warrantless administrative search of his home by probation and parole officers. He claims that the search was "unreasonable" because the officers lacked "reasonable suspicion." We review a trial judge's denial of a motion to suppress after an evidentiary hearing for abuse of discretion.[6] To the extent the claim of error implicates questions of law, however, our standard of review is de novo.[7]

### Sierra's Probationary Status

On February 5, 2007 (the day of the search), Sierra was on Level IV probation (home confinement). As one of the conditions of his supervision, Sierra acknowledged that he was "subject to arrest and a search of [his] person, living quarters and/or vehicle without a warrant at any time by a probation/parole officer." Sierra also acknowledges that, as a probationer, he was required to "[a]llow officers to enter [his] home or place of employment at any time they request."

■ Probationers do not have the same liberties as ordinary citizens.[8] The special nature of probationary supervision justifies a departure from the usual warrant and probable cause requirements for searches, although a warrantless search of a probationer's home must still be "reasonable."[9] The United States Supreme Court and this Court have held that a warrantless administrative search of a probationer's residence requires the probation officer to have "reasonable suspicion" or "reasonable grounds" for the search.[10] "Reasonable suspicion" exists where the "totality of the circumstances" indicates that the officer had a "particularized and objective basis" for suspecting legal wrongdoing.[11]

### Delaware's Probation Regulations

In Delaware, the legislative authority that permits probation and parole officers

6. *Donald v. State*, 903 A.2d 315, 318 (Del. 2006).

7. *Id.*

8. *See McAllister v. State*, 807 A.2d 1119, 1124 (Del.2002) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)).

9. *See Fuller v. State*, 844 A.2d 290, 292 (Del. 2004) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)).

10. *Griffin v. Wisconsin*, 483 U.S. 868, 872–73, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *United States v. Knights*, 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); *Donald v. State*, 903 A.2d 315, 318–19 (Del.2006).

11. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). *See, e.g., Fuller v. State*, 844 A.2d 290, 291–93 (Del.2004).

to effect searches of the individuals they supervise is title 11, section 4321(d) of the Delaware Code.[12] Under that statutory authority, the Department of Corrections has adopted regulations governing warrantless searches of probationers.[13] Those regulations provide that, absent exigent circumstances, a probation and parole officer must obtain the approval of a supervisor, manager or director before conducting a search.[14] The officer and the supervisor must "hold a case conference using the Search Checklist as a guideline"[15] unless "exigent circumstances exist forcing the officer into action."[16]

█ "Generally, the following factors should be considered when deciding whether to search: [1] The Officer has knowledge or sufficient reason to believe [that] the offender possesses contraband; [2] The Officer has knowledge or sufficient reason to believe [that] the offender is in violation of probation or parole; [3] There is information from a reliable informant indicating [that] the offender possesses contraband or is violating the law; [4] The information from the informant is corroborated; [5] Approval for the search has been obtained from a Supervisor."[17] Under those regulations, a probation and parole officer must have personal "knowledge or sufficient reason to believe" or must have received "information from a reliable informant" that the probationer or parolee possesses contraband, is in violation of probation or parole, or is violating the law. Thus, Delaware law does not permit suspicionless searches of probationer or parolee residences.

### Whether "Reasonable Suspicion" Existed

█ In assessing whether a tip from a C.I. is sufficient to create a "reasonable suspicion" of wrongdoing, the "totality of the circumstances" must be considered.[18]

12. Del.Code Ann. tit. 11, § 4321(d) relevantly provides: "Probation and parole officers shall exercise the same powers as constables under the laws of this State and *may conduct searches of individuals under probation and parole supervision in accordance with Department procedures* while in the performance of the lawful duties of their employment and shall execute lawful orders, warrants and other process as directed to the officer by any court, judge or Board of Parole of this State ...." (emphasis added)

13. *See* Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001).

14. *Id.,* § VI. E.5.

15. *Id.* § VI.A.6.

16. *Id.,* §§ VI.A.1, VI.A.6.

17. *Id.,* § VI.E. The ten factors listed by the Superior Court in its letter opinion correspond to the previous version of Probation and Parole Procedure No. 7.19, which was amended effective June 5, 2001. Those factors were: "(1) observations by a staff member; (2) information provided by an informant; (3) the reliability of the information; (4) the reliability of the informant; (5) the activity of an offender that indicates the offender might possess the contraband; (6) information provided by the offender which is relevant to whether the offender possesses contraband; (7) experiences of probation officers with an offender; (8) prior seizures of contraband from an offender; (9) whether the offender has signed Conditions of Supervision; and finally, (10) the offender's prior conviction pattern." *See State v. Sierra,* I.D. No. 0702003676, at 5–6, 2007 WL 5194085 (Del.Super.Aug. 3, 2007). Interestingly, the amended version of Procedure No. 7.19 no longer mentions the signing by the probationer of conditions of supervision among the factors to be considered (former factor 9).

18. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (overruling the two-pronged *Aguilar–Spinelli* test that required a confidential informant to state sufficient facts establishing (1) the basis for his statements (the "basis of knowledge" prong) and (2) the informant's "credibility" or the

A C.I.'s "credibility," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his information.[19] Here, the probation and parole officer who ordered the search did not speak directly with the C.I.

In fact, Cronin testified that the C.I.'s identity was never communicated to him and that he did not know whether the C.I. was "past proven reliable." On the other hand, Cronin emphasized that the C.I. was an identified person (as opposed to an anonymous informant) and that the DOJ employee "had the ability to assess [the C.I.'s] credibility and hold [the C.I.] accountable should th[e] information prove to be false." Cronin further testified that he "would assume that [the C.I.] had involvement with substance abuse, ... had a criminal history and may have inducements to produce th[e] information."

The record of the suppression hearing does not reflect any information about the C.I.'s credibility, reliability and basis of the C.I.'s knowledge.[20] Sierra argues that Delaware law requires that an informant's reliability be established or, alternatively, that the informant's information be corroborated. Sierra bases that argument on title 11, section 4321(d) of the Delaware Code, which incorporates by reference Probation and Parole Procedure No. 7.19. Sierra's argument is supported by our recent decision in *Culver v. State*.[21]

In Delaware, probation officers "may conduct searches of individuals under probation and parole supervision *in accordance with Department procedures*."[22] In Sierra's case, the probation officers' failure to adhere to the procedural requirements of Probation and Parole Procedure 7.19 was not harmless.[23] The record reflects

"reliability" of the information provided (the "veracity" prong) and adopting instead a "totality of the circumstances" test); *see Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). This Court has adopted the *Gates* holding in *Gardner v. State*, 567 A.2d 404, 409–10 (Del.1989). Although *Gates* and *Gardner* involved a determination of whether the police had probable cause for a search warrant based on an informant's tip, the teachings of those cases are applicable in the context of determining whether probation and parole officers have "reasonable suspicion" to conduct a warrantless search of a probationer's residence.

**19.** *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**20.** Some of those elements (credibility, reliability and basis of knowledge of the C.I.) were described by the State in a letter dated June 29, 2007, sent to the Superior Court judge assigned to the case in preparation for the upcoming *Flowers* hearing to determine whether or not the identity of the C.I. should be disclosed. That letter was not (at that time) sent to Sierra's counsel and was not made part of the record for the subsequent

suppression hearing. The State, however, included that letter (with appropriate redactions) in its Answering Brief on this appeal. Because the record on appeal is limited to "the original papers and exhibits," this Court cannot review or rely upon any information contained in that *ex parte* communication between the State and the Superior Court judge. *See* Supr. Ct. R. 9(a).

**21.** *Culver v. State*, 2008 WL 2987183 (Del. Supr.).

**22.** Del.Code Ann. tit. 11, § 4321(d) (emphasis added); *see also Culver v. State*, 2008 WL 2987183, at *1, *4 (Del.2008) (suppressing evidence obtained in violation of Probation and Parole Procedure 7.19).

**23.** *See Fuller v. State*, 844 A.2d 290, 292 (Del. 2004). In *Fuller*, the probation officer received a tip from a past proven reliable informant and then "obtained a supervisor's approval [for a search] after considering the substantive factors on which the regulations require that search decisions be made," but did not fill out the checklist itself. *Id.* The Court held the search lawful even though the probation officer had departed from department guidelines. *Id.* at 290. Although the

the procedural failures in Sierra's case violated the substantive protection that those regulations provide to probationers, as described by this Court's recent decision in *Culver v. State*.[24]

In *Culver*, we held "that Procedure 7.19 makes it plain that probation officers must rationally assess the facts made known to them *before* reaching the critical conclusion that there is a reasonable basis to search a probationer's dwelling."[25] As this Court noted in *Culver*, Procedure 7.19 requires that probation officers assess the reliability of informants and provides a four-part test with which to judge the merits of an informant's tip:[26]

> In evaluating reliability of information, was [1] the information detailed, [2] consistent, [3] was the informant reliable in the past, and [4] consider the reason why the informant is supplying information.

As in *Culver*, the facts of Sierra's case fail to satisfy these inquiries.

First, the information was not sufficiently detailed. Officer Cronin received the tip from an unidentified DOJ employee, not from the informant. At the suppression hearing, Officer Cronin did not reveal the identity or position of this individual from the DOJ. Additionally, on the pre-search checklist, Sierra's probation officer,

Officer Lingafelt, checked the box on the search checklist indicating that the information from the informant was not corroborated. The record of Officer Cronin's testimony does not reflect whether the C.I. learned first hand of the delivery or whether the C.I. heard of the delivery from someone else.

Second, the tip provided only observable information. The other information the C.I. provided is similar to that involved in *LeGrande v. State*,[27] where this Court noted that the police had only confirmed the defendant's identity, location, probationary status, and the fact that his neighbor was wanted. Here, no evidence was presented as to why the C.I. knew of the drug delivery. As in *Culver*[28] and *LeGrande*,[29] the information provided by the C.I. did not show that the informant had actual knowledge of illegal activity.

Third, the record of the suppression hearing provides no indication that the C.I. was past proven reliable. Officer Cronin did not specify whether the unidentified DOJ employee had indicated that the informant had proven reliable in the past and Officer Cronin did not undertake his own investigation into the C.I.'s reliability. The record reflects no indication that Officer Cronin inquired into the C.I.'s reliabili-

---

preferable (and wisest from an evidentiary standpoint) method to conduct the search is to both fill out the checklist and perform an independent analysis of the situation in the process, the most important thing is that the analysis itself occurs. In this case, the checklist was filled out, but the appropriate independent analysis was *not* performed.

24. *Culver v. State*, 956 A.2d 5, 2008 WL 2987183 (Del.Supr.). Sierra emphasizes that Cronin, by his own admission, "did not detect any significant violations [of probation conditions] in reviewing [Sierra's] electronic file prior to [the search]." In particular, Sierra had no missed office appointments or curfews, no unexcused absences from his resi-

dence, and the urine samples he provided tested negative for drugs. According to Cronin, the only potential violation of the conditions of supervision was related to Sierra being unemployed for a certain period of time.

25. *Id.* 956 A.2d at 11, at *4 (emphasis added).

26. *Id.* 956 A.2d at 10–11, at *4–5.

27. *LeGrande v. State*, 947 A.2d 1103, 1111 (Del.2008).

28. *Culver v. State*, 956 A.2d at 11, 2008 WL 2987183, at *5.

29. *LeGrande v. State*, 947 A.2d at 1111.

ty, but instead indicates that he focused on the reliability of the unidentified DOJ employee.

In *Culver*, this Court held that probation officers must not "rely on police officers *vouching* for anonymous callers with no proven track record for supplying credible, reliable information. Rather, police officers must provide probation officers sufficient facts so that the probation officers can independently and objectively assess the reasonableness of the inferences to be drawn from the caller's tip."[30] The same rationale applies in Sierra's case. The DOJ employee could not simply vouch for the C.I. without providing Officer Cronin with sufficient facts enabling him to assess independently the reasonableness of the tip.

■ Fourth, in considering the reason why the C.I. is supplying the information, Officer Cronin testified that when he is assessing a tip and is unaware of the C.I.'s motives, he assumes the informant has something to gain by providing the tip. We also assume *arguendo*, as did Officer Cronin, that the C.I. had something to gain.[31] In light of the uncorroborated nature of the allegations and the C.I.'s lack of past proven reliability, however, this self-interested tip alone was insufficient to establish a basis for a search.

### Search Violated Procedures

■ By agreeing to probation, individuals sacrifice some of their privacy rights in exchange for freedom from incarceration.[32]

Nevertheless, probationers do not surrender all of their privacy rights, and probation officers can only conduct searches when they have a reasonable basis to do so.[33] In *Culver* we held that Probation and Parole Procedure 7.19 "requires probation officers to assess any 'tip' relayed to them and independently determine if a reasonable suspicion exists that would, in the ordinary course of their duties, prompt a search of a probationer's dwelling."[34]

In Sierra's case, no such independent investigation occurred. Instead, Officer Cronin relied on an unidentified DOJ employee's assessment that the C.I. was reliable. A call from an unidentified Department of Justice employee, based upon information received from an unidentified C.I., is not enough to meet the requirements of Probation and Parole Procedure 7.19. Officer Cronin should have independently examined the information to assess the reliability of the C.I.'s tip.

As in *Culver*, the information presented in Sierra's case did not comport with the requirements of Probation and Parole Procedure 7.19 and could not sustain a reasonable suspicion to search Sierra's residence. Since no independent assessment of the tip leading to the search of Sierra's residence occurred, pursuant to *Culver*, the violation of Procedure 7.19 was not harmless, and we hold the evidence gained during that search must be suppressed.[35] As we stated in *Culver*, to allow evidence obtained in violation of Procedure 7.19 "would render

---

**30.** *Culver v. State*, 956 A.2d at 13, 2008 WL 2987183, at *6.

**31.** As was indeed the case, as the informant was a defendant in another criminal case and provided the tip to the prosecutor.

**32.** *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *McAllister v. State*, 807 A.2d 1119, 1124 (Del.2002).

**33.** *Griffin v. Wisconsin*, 483 U.S. at 873–74, 107 S.Ct. 3164; *Donald v. State*, 903 A.2d 315, 319 (Del.2006).

**34.** *Culver v. State*, 956 A.2d at 7, 2008 WL 2987183, at *1.

**35.** This is an independent state law basis for our decision. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

11 *Del. C.* § 4321 and the regulations promulgated under it meaningless."[36] We also hold that the search of Sierra's residence without reasonable suspicion violated his Fourth Amendment rights as a probationer pursuant to the United States Supreme Court's holding in *Griffin v. Wisconsin.*[37]

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**36.** *Culver v. State,* 2008 WL 2987183, at *1.

**37.** *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).