# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE         )
                                      )
        v.                   )
                                      ) C.A. No. 1402018635
STEVEN A. GILLIS          )
                                      )

Submitted: July 18, 2014
Decided: July 24, 2014

On Defendant's Motion to Suppress
**DENIED**

## MEMORANDUM OPINION

Defendant Steven A. Gillis has moved to suppress certain evidence. The Court held a suppression hearing on July 18, 2014. The Court makes the following factual findings.

On February 27, 2014, Defendant's vehicle was stopped for failure to wear a seatbelt. Following the stop, the Delaware State Police officer determined that Defendant's driver's license was revoked for a felony trafficking in cocaine, and Defendant was on probation. The officer determined that Defendant had a prior conviction for driving while suspended or revoked, and two pending driving during suspension charges.

1

Defendant stated that he lived "right around the corner" at Lancaster Court Apartments. Defendant possessed a house key for Lancaster Court. The officer saw a yellow envelope on the passenger's lap. The envelope contained a large amount of cash. Defendant and the passenger (Defendant's sister) were removed from the vehicle. A K-9 search was conducted. The dog alerted for the presence of illegal drugs on the rear bumper of the vehicle and on the currency.

The State Police officer contacted a probation officer. The probation officer contacted his supervisor and obtained approval for an administrative search of Defendant's residence. The Arrest/Search Checklist and Bureau of Community Corrections Arrest/Incident Report were entered as an exhibit during the suppression hearing. An administrative search of Defendant's residence was approved on the grounds of: the K-9 alert to the presence of illegal drugs in a vehicle that Defendant was driving; Defendant's previous drug conviction; and Defendant driving while his license was revoked.

Probation & Parole (P&P) officers conducted a search of the address on record as Defendant's residence. However, P&P determined that Defendant's personal belongings were not located at that residence. During her interview, Defendant's sister informed the State Police officer that Defendant resided with his girlfriend and child at Lancaster Court Apartments, which were "right around the

corner" from the vehicle stop.

P&P conducted a second administrative search of the Lancaster Court apartment. The key found on Defendant's person fit the front door lock to the apartment. In a bedroom, P&P saw a storage bin containing all male clothing, court documents relating to Defendant, and mail addressed to Defendant. The search located: a firearm, which had one round of ammunition chambered and an additional four rounds in the magazine; a box of ammunition containing 20 rounds; and glassine bags commonly used to package illegal drugs. Defendant's girlfriend denied awareness or ownership of the items found.

Ultimately, it was determined that the $4000.00 in United States currency was the result of an auto insurance claim and vehicle claim. The cash was returned to Defendant's sister.

After the Lancaster Court search, Defendant was given *Miranda* warnings. Defendant stated that he resided at both his address on record with P&P, and at Lancaster Court. The following exchange took place during Defendant's interview:

> Police Officer: We obviously don't want to have to go back and arrest [your girlfriend], that's kind of the problem where we're at right now. Do you see where we're at right now? We have a gun, in an apartment, with kids. So we're trying to figure out whose gun it is and how it got there, and if we can't figure it out then we have to go back and do an arrest warrant for her and arrest her for the possession of a

3

firearm, which is a felony. So what I'm asking is, what do you know about this gun?

Defendant: I know that it was put up there . . .

Police Officer: Do you know who put it up there? I can see you shaking your head. I mean, I think I know the answer and I think you know the answer it's just a matter of whether or not you want to do the right thing. That's all it comes down to. Are you going to stick it on your girl or are you going to do the right thing?

Defendant: How you gonna stick it on her?

Police Officer: Dude, we're at the spot now where . . .

Defendant: I ain't got no choice but to bite it.

Police Officer: So what you're telling me is - -

Defendant: Yeah it was my gun, yeah.

Police Officer: It was your gun?

Defendant: I mean it wasn't mine but yeah I put it up there.

Police Officer: When did you put it up there?

Defendant: It was up there a long time.

Police Officer: I didn't even look at it, do you know what caliber it is?

Defendant: No. I don't really know too much about guns.

Police Officer: Do you know what color it is?

Defendant: I know it was brown, old, rusty.

Police Officer: Where did you get it from?

4

Defendant: Actually, I got it off the street.

Police Officer: Whereabouts?

Defendant: A guy came through selling guns.

Police Officer: How much you pay for it?

Defendant: Hundred bucks.[1]

## ANALYSIS

### *Administrative Searches*

In *Sierra v. State*,[2] the Delaware Supreme Court held that the following factors must be considered in determining the propriety of an administrative search of a probationer's property:

> [1] The Officer has knowledge or sufficient reason to believe [that] the offender possesses contraband; [2] The Officer has knowledge or sufficient reason to believe [that] the offender is in violation of probation or parole; [3] There is information from a reliable informant indicating [that] the offender possesses contraband or is violating the law; [4] The information from the informant is corroborated; [5] Approval for the search has been obtained from a Supervisor.[3]

The Court finds that P&P had sufficient reason to believe: that Defendant possessed contraband as a result of the K-9 alert; and that Defendant was in violation

---

[1]Defendant's Recorded Statement, June 8, 2010, DSP Officer Huston, Steven Gillis TR at 11:00-14:35.

[2]958 A.2d 825 (Del. 2008).

[3]*Id.* at 832.

of his parole as a result of driving with a revoked license. P&P followed the requisite procedures prior to performing the first administrative search.

The Court also finds that the second administrative search was proper. Based upon: the negative results of the search of Defendant's record address; Defendant's sister's information that Defendant lived with his girlfriend; and Defendant's own statement that he lived "right around the corner" from the vehicle stop, it was reasonable for P&P to search the Lancaster Court apartment as the current residence of Defendant.[4]

The State contends that the Lancaster Court search was pursuant to the consent of Defendant's girlfriend. Conflicting testimony on this issue was presented during the suppression hearing. Because the Court finds that the second administrative search was justified, and that P&P was not required to obtain separate approval, the Court need not resolve the issue of consent to search.

---

[4]*See United States v. Manuel*, 342 F. App'x 844, 847-48 (3d Cir. 2009) (administrative search of unregistered address justified when officers had reasonable suspicion that parolee was not residing at registered address, based on the defendant's name on the mailbox and the defendant's keys opening the door to the unregistered address).

## *Post-<u>Miranda</u> Interview*

Following *Miranda* warnings, a statement by the Defendant will be excluded if, considering the totality of the circumstances, the suspect's will was overborne by law enforcement officers.[5] An admission or confession caused by and resulting from coercive government misconduct will be deemed involuntary.[6] Absent evidence of police coercion rising to the level of overreaching or outrageous behavior, the admission or confession is voluntary.[7]

Defendant argues that he ultimately reversed his denial of knowledge or ownership of the firearm because his free will was overborne by the threat that the mother of his child would be arrested if he did not confess. Defendant testified that he feared that her arrest would affect her employment and result in social services taking custody of his child.

Defendant's girlfriend testified that the items were found in her bedroom. A firearm, ammunition and drug paraphernalia, which are found in the same home with a young child, could result in criminal prosecution of the adult residents of the home.

---

[5]*Haynes v. Washington State*, 373 U.S. 503, 513-14 (1963).

[6]*Marine v. State*, 607 A.2d 1185, 1199 (Del. 1992); *see Colorado v. Connelly*, 479 U.S. 157, 163 (1986).

[7]*Marine*, 607 A.2d at 1199.

In *Turner v. State*, the Delaware Supreme Court held that the defendant's belief - that his girlfriend would be charged with a crime - did not amount to coercion.[8] In *Turner*, Orin Turner entered an apartment with his girlfriend. The girlfriend ran out of the room when Turner shot another man. Turner and his girlfriend were later arrested. Turner was read his *Miranda* rights and interviewed. Turner told a detective that he did not want his girlfriend to go to prison and would "tell [the police] everything."[9] Turner and his girlfriend were taken to Justice of the Peace Court 7. Turner was present while his girlfriend's charges were read—none of which related to the shooting—and she was released on unsecured bond. Turner returned to the police station, was read his *Miranda* rights and reiterated his desire to confess. Turner testified that the police officers threatened to charge his girlfriend with conspiracy to attempted murder. Turner argued that he was coerced to confess because the officers gave him copies of the arrest warrant and affidavit of probable cause, which contained the charge of conspiracy with his girlfriend to commit attempted murder. The *Turner* Court found that Turner's "internal and subjective belief that [his girlfriend] would be charged (based on his interpretation of his charges) does not amount to coercion."[10]

---

[8]957 A.2d 565 (Del. 2008).

[9]*Id*. at 568.

[10]*Id*. at 571.

The Court has reviewed the taped interview and finds that law enforcement did not engage in coercive misconduct. The interview lasted approximately 22 minutes. Defendant was provided with a glass of water. The officer was professional. The Court finds that Defendant's free will was not overborne by the suggestion that Defendant's girlfriend might be arrested. There is no evidence of overreaching or outrageous police coercion.

## CONCLUSION

The Court finds that the second administrative search was proper. Further, the post-*Miranda* statements by Defendant were voluntary and not the result of coercive conduct by law enforcement.

**THEREFORE,** Defendant's Motion to Suppress is hereby **DENIED.**

**IT IS SO ORDERED.**

/s/ *Mary M. Johnston*____
The Honorable Mary M. Johnston

9