IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | § | |
| | § | No. 140, 2016 |
| Plaintiff Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| DIMAERE BRADY, | § | ID No. 1509018082 |
| | § | |
| Defendant Below- | § | |
| Appellee. | § | |

Submitted: October 13, 2016
Decided: December 5, 2016

Before **STRINE**, Chief Justice; **VAUGHN** and **SEITZ**, Justices.

## O R D E R

On this 5th day of December 2016, upon consideration of the parties' briefs and the record of the case, it appears that:

(1) The State appeals from a Superior Court order granting Dimaere Brady's motion to suppress evidence. It asserts one claim on appeal. It claims that the Superior Court abused its discretion when it granted Brady's motion to suppress.

(2) On September 3, 2015, Detective Neil Evans of the Wilmington Police Department and Probation Officer William Walker stopped Brady after the pair observed him driving. The officers were familiar with Brady, who was on probation, and knew that he did not have a valid driver's license. Brady was driving a black

Chrysler 300 that was registered to his girlfriend, Tylen Bailey. Instead of cooperating with the officers, Brady became combative and had to be forcibly taken into custody. The officers found thirty-nine bags of heroin and $903 cash on Brady's person. Brady told the officers that he was a heroin user, and while he did not sell the drug, he did receive money to transport heroin for others.

(3) Three weeks later, on September 24, 2015, Det. Evans and P.O. Walker were again on patrol in Wilmington as part of the Operation Safe Streets program. At approximately 10:50 p.m., the pair observed Brady walking south in the 700 block of Adams Street. From their previous encounter with Brady, the officers were aware that as a condition of his probation, Brady was not permitted to be outside of his residence after 7:00 p.m.

(4) When the officers approached Brady, he acknowledged that he was in violation of his curfew and explained that he was only going to the store to pick-up a few items for his grandmother. As the officers began to take Brady into custody for the curfew violation, he again resisted, this time by straightening out his arms in an effort to prevent the officers from handcuffing him. Other members of Operation Safe Streets arrived to assist, and the officers were able to place Brady in custody. Once Brady was in handcuffs, Det. Evans conducted a search of his person and found $781 in cash, a house key, and a vehicle key.

2

(5) Det. Evans then gave the vehicle key to another Operation Safe Streets officer and that officer, and others, began searching the area for the car that went with the key. While other officers were looking for the car, Brady mentioned to Det. Evans that he could help the police find people selling crack cocaine and heroin as well as someone with an illicit firearm. The vehicle key was eventually linked to a maroon 2006 Hyundai Sonata which was located on the 800 block of Adams Street. Once the vehicle was located, the officers checked the vehicle's registration and discovered that the Hyundai was registered to Brady's girlfriend, Ms. Bailey. Given the similarity of the circumstances between the September 3rd incident and the September 23rd incident, the officers suspected that Brady had drugs accessible to him. P.O. Walker then called his unit Supervisor, Carlo Pini, to request permission to conduct an administrative search pursuant to 11 *Del. C.* § 4321(d). After discussing the items on the pre-search checklist, which is required by Department of Correction Procedure 7.19,[1] P.O. Walker

---

[1]

> "Generally, the following factors should be considered when deciding whether to search: [1] The Officer has knowledge or sufficient reason to believe [that] the offender possesses contraband; [2] The Officer has knowledge or sufficient reason to believe [that] the offender is in violation of probation or parole; [3] There is information from a reliable informant indicating [that] the offender possesses contraband or is violating the law; [4] The information from the informant is corroborated; [5] Approval for the search has been obtained from a Supervisor."

*Sierra v. State*, 958 A.2d 825, 829 (Del. 2008) (quoting Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001)).

received permission from Mr. Pini to conduct a search of the Hyundai and of Brady's residence.

(6) Upon conducting a search of the Hyundai, officers found a .30 caliber rifle, three magazines, and ammunition in a book bag which was on the front passenger seat. Brady was subsequently charged with Carrying a Concealed Deadly Weapon, Possession or Control of a Firearm by a Person Prohibited, and Possession or Control of Ammunition by a Person Prohibited.

(7) Before trial, Brady filed a motion to suppress the evidence seized from the Hyundai, arguing that the officers did not have a reasonable suspicion that the car contained any evidence of criminal activity. After an evidentiary hearing, the Superior Court issued an order suppressing the evidence found in the Hyundai. The Court reasoned that "[t]he only connection between Brady and [the Hyundai] was the fact that Brady had a suspended license, had the car keys in his pocket, and had previously been found in possession of heroin while driving another vehicle registered to Tylen Bailey."[2]

(8) "This Court reviews a trial court's [grant] of a motion to suppress after an evidentiary hearing for abuse of discretion. The trial court's formulation and

---

[2] *State v. Brady*, 2016 WL 749494, at *2 (Del. Super. Ct. Feb. 25, 2016).

4

application of legal concepts are reviewed *de novo*, but the trial court's factual findings will be upheld so long as they are not clearly erroneous."[3]

(9) In the case of a probationer, "[a] probation officer must have a reasonable suspicion or reasonable grounds to justify an administrative search of a residence or car."[4] "Reasonable suspicion has been defined as the officer's ability to 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'"[5] "A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[6]

(10) After a careful review of the record on appeal, we think that the Superior Court did not give adequate weight to the principle that reasonable suspicion should be evaluated in the context of the totality of the circumstances as viewed through through the eyes of a reasonable officer with the same knowledge and experience as Det. Evans and P.O. Walker, combining objective facts with the officers' subjective interpretation of those facts. The officers acted on specific, articulable facts which

---

[3] *Rivera v. State*, 7 A.3d 961, 966 (Del. 2010).
[4] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012).
[5] *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968).
[6] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).

formed their suspicion that drugs were accessible to Brady in the Hyundai, which justified the search of the Hyundai. On September 23, 2015, both Det. Evans and P.O. Walker were familiar with Brady; the officers had arrested him three weeks prior, and P.O. Walker had supervised Brady on probation several years earlier. They knew from their previous encounter with Brady that he had told them that he sometimes transported heroin for others. On that evening, Brady was out almost four hours past his curfew. The officers testified that while Brady claimed he was going to the store for his grandmother, his location did not corroborate his statement. Based on P.O. Walker's testimony, Brady was stopped beyond the store in relation to his residence. Det. Evans testified that Brady also told the officers that he possessed information related to crimes taking place in the area, and he offered to reveal the information to the officers. Det. Evans testified that based on his training and experience, this type of statement is often used as an attempt to distract the arresting officers and draw their attention away from something possibly illegal.

(11) In addition, the September 23rd encounter was very similar to the officers' encounter with Brady just three weeks prior, where the officers discovered thirty-nine bags of heroin, in several key ways. On both occasions, Brady possessed a large amount of cash; $903 on September 3rd and $781 on September 23rd. While Brady was not driving a car on the night of the September 23rd encounter with the officers, he did

possess a vehicle key which gave him access to that vehicle, despite the fact that he did not have a valid driver's license. Both the vehicle that Brady was driving on September 3rd and the vehicle linked to the key found on his person on September 23rd were registered to Brady's girlfriend.

(12) We are satisfied that when the facts and circumstances of this case are viewed through the eyes of a reasonable, trained officer, combining both the objective facts and the officers' subjective interpretation of those facts, the officers had a reasonable suspicion that Brady had drugs available to him in the Hyundai Sonata. The Superior Court erred in granting the motion.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED and the matter is referred to the Superior Court for further proceedings.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

7