# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                           )
v.                         )          I.D. No. 1610003340
                           )
ROBERT POKOISKI,           )
                           )
Defendant.                 )

## OPINION

Date Submitted: April 3, 2017
Date Decided: June 19, 2017

*Upon Defendant's Motion to Suppress:* **GRANTED.**

Allison J. Abessinio, Esquire, Deputy Attorney General, Delaware Department of Justice, 820 North French Street, Wilmington, DE. Attorney for the State.

David C. Skoranski, Esquire, 820 North French Street, Wilmington, DE. Attorney for Defendant.

**Jurden, P.J.**

# I. INTRODUCTION

In response to an informant's tip that Defendant Robert Pokoiski possessed a firearm, Probation officers performed a warrantless administrative search of Defendant's residence, located a firearm and ammunition, and seized those items. As a result of the warrantless administrative search, Defendant was charged with Possession of a Firearm by a Person Prohibited and Possession of Ammunition by a Person Prohibited. Defendant filed a Motion to Suppress, the State responded, and the Court held a suppression hearing.[1] For the reasons set forth below, Defendant's Motion to Suppress is **GRANTED**.

# II. FACTS

On October 6, 2016, Wilmington Police Detective Matthew Rosaio relayed information from an informant to Probation Officer William Walker that a probationer living at 509 Maryland Avenue was in possession of a firearm. The informant was not past proven reliable. Officer Walker performed a search on Probation's DACS system to ascertain whether a probationer lived at 509 Maryland Avenue. The system identified Defendant Robert Pokoiski as a resident of 509 Maryland Avenue, and Officer Walker confirmed that Defendant was serving a Level II probation sentence. Pursuant to 11 *Del. C.* § 1448, Defendant was prohibited from possessing a firearm and/or ammunition. Officer Walker

---

[1] D.I. 8–12.

2

provided Detective Rosaio with a photograph of Defendant. Detective Rosaio showed the photograph to the informant, and the informant stated that the person pictured was the probationer they observed in possession of a firearm.

Officer Walker did not solicit additional information from the informant either directly or through Detective Rosaio with regard to whether the informant's tip was based on personal knowledge, whether the informant could provide additional details that might establish the reliability of the tip, or the reasons that the informant was supplying the information.[2] Thus, the tip was wholly uncorroborated as to Defendant's alleged possession of a firearm.

Upon the informant's identification of Defendant and Officer Walker's confirmation of Defendant's status as a probationer, Officer Walker contacted his supervisor, Robert Willoughby, to receive permission to conduct a warrantless administrative search of Defendant's residence. Officer Walker and Officer Willoughby reviewed Probation's Arrest/Search Checklist,[3] whereupon Officer Willoughby approved a warrantless administrative search of the residence and

---

[2] See Culver v. State, 956 A.2d 5, 10 (Del. 2008) (explaining that Probation and Parole Procedure 7.19 requires: "In evaluating the reliability of information, was the information detailed, consistent, was the informant reliable in the past, and consider the reason why the informant is supplying information.").

[3] D.I. 9 State's Ex. 1. The Arrest/Search Checklist is divided into two sections: Pre-Arrest Considerations and Pre-Search Considerations. For the Pre-Arrest Considerations, Officer Walker checked seven out of the nine considerations, including: reason to believe offender is engaged or about to engage in a substantial risk to the community or their self; offender has a capias history or likely to abscond; and approval from Supervisor, Manager, or Director. For the Pre-Search Considerations, Officer Walker checked seven out of nine considerations, including: offender believed to possess contraband; information from informant is corroborated; and approval from Supervisor, Manager or Director.

approved Defendant's arrest. At the time Officer Willoughby approved the search, he was aware that the informant was not past proven reliable.

Two Probation officers, including Officer Walker, and four members of the Wilmington Police Department, including Detective Rosaio, responded to 509 Maryland Avenue to conduct the administrative search.[4] Upon arrival, the officers knocked on the front door, Defendant inquired who was at the door, and the officers identified themselves as Probation officers. Defendant opened the door, and Officer Walker asked Defendant if there was any contraband in the residence. Defendant replied that he did not think there was. When asked if he was sure there was no contraband inside the residence, Defendant replied that there was a gun in the upstairs bedroom. Officer Walker searched the upstairs bedroom and found a 9 mm firearm, ammunition, and a hip holster. After Officer Walker retrieved the firearm from the upstairs bedroom, the officers did not ask Defendant any further questions until Detective Rosaio informed Defendant of his *Miranda* rights.

At the suppression hearing on the instant Motion, Officer Walker testified that he would have searched the house regardless of whether Defendant admitted possessing a firearm and that Defendant was not at liberty to leave at the time that he was being questioned prior to the search.

_____

[4] *Id.*

4

## III. PARTIES' CONTENTIONS

Defendant asserts that Officer Walker did not have reasonable suspicion to search Defendant's residence after completing the Arrest/Search Checklist with his supervisor. As a consequence of this lack of reasonable suspicion, Defendant argues, the issuance of the administrative search authorization was "illegal," thereby tainting both Defendant's statement and the items seized.[5] Thus, the firearm is the fruit of an illegal search. As fruit of an illegal search, Defendant maintains the firearm should be excluded if the illegal search is the "but for" cause of its discovery.[6] According to Defendant, the issuance of the administrative search authorization is the "but for" cause of the discovery, and therefore, both Defendant's statements to Officer Walker and the items seized should be suppressed.[7]

The State argues that Officer Walker complied with Probation guidelines by completing the Arrest/Search Checklist and obtaining approval from Officer Willoughby to conduct an administrative search of Defendant's residence.[8] While the State concedes that Officer Walker did not have reasonable suspicion to conduct an administrative search at the time the search was authorized, the State maintains that Officer Walker lawfully entered Defendant's residence and engaged

---

[5] D.I. 11 at 3–4.
[6] *Id.* at 1–2.
[7] *Id.*
[8] D.I. 10 at 7.

5

in conversation with Defendant.[9] Thus, the State argues, at the time Officer Walker searched Defendant's residence, he had reasonable suspicion to search based on Defendant's corroboration of the informant's tip that there was a firearm in the upstairs bedroom.[10]

In the alternative, the State argues that even if the issuance of the administrative search authorization was "illegal" as argued by Defendant, Defendant's statement, as well as the items seized at Defendant's residence, are "sufficiently distinguishable" from any illegality such that they should not be suppressed.[11] In support of this argument, the State argues that the officers obtained an admission that there was a gun in the residence after lawfully entering the residence and speaking to Defendant, and Defendant's admission would support a finding of reasonable suspicion to search entirely independent of the confidential informant's tip.[12]

## IV. STANDARD OF REVIEW

While "[p]robationers do not have the same liberties as ordinary citizens,"[13] and "the unique nature of probationary supervision 'justifies a departure from the

---

[9] D.I. 12 at 1, 3.

[10] *Id.* at 3.

[11] *Id.* at 2–3.

[12] *Id.* at 2.

[13] *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008) (citing *McAllister v. State*, 807 A.2d 1119, 1124 (Del. 2002)).

6

usual warrant and probable cause requirements for searches,'"[14] "Delaware case law and administrative law do not permit suspicionless probationer searches."[15] A probation officer must have reasonable suspicion or reasonable grounds to justify an administrative search of a residence.[16]

Probation officers are authorized to conduct warrantless administrative searches of probationers pursuant to 11 *Del. C.* § 4321(d), which states:

> Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment and shall execute lawful orders, warrants and other process as directed to the officer by any court, judge or Board of Parole of this State . . . .

The Delaware Department of Correction has enacted procedures that govern how probation officers initiate administrative searches of probationers' residences.[17] In the absence of exigent circumstances, the probation officer must hold a case conference with their supervisor using the Search Checklist as a guideline to determine whether there is reasonable suspicion to conduct an administrative search.[18] "'Reasonable suspicion' exists where the 'totality of the circumstances' indicates that the officer had 'a particularized and objective basis' for suspecting

---

[14] *Jacklin v. State*, 16 A.3d 938, 2011 WL 809684, at *2 (Del. 2011) (TABLE) (quoting *Sierra*, 958 A.2d at 828).

[15] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012), *as corrected* (July 10, 2012).

[16] *Id.*

[17] *Sierra*, at 829 (citing Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001)).

[18] *Id.*

legal wrongdoing."[19] In cases like the instant one, where the decision to search is based on a tip, Probation and Parole Procedure 7.19 requires Probation officers to "assess any 'tip' relayed to them and independently determine if a reasonable suspicion exists that would, in the ordinary course of their duties, prompt a search of a probationer's dwelling."[20]

## V. DISCUSSION

As an initial matter, the State has conceded that at the time Officer Walker sought authorization to search Defendant's residence from Officer Willoughby, Officer Walker did not have reasonable articulable suspicion to support a warrantless administrative search. The State's concession flows from the clarity of Delaware law with regard to whether an uncorroborated tip from an informant who is not past proven reliable can, by itself, support a finding of reasonable articulable suspicion.[21] It cannot.

---

[19] *Jacklin*, 2011 WL 809684, at *2 (quoting *Sierra*, 958 A.2d at 828).

[20] *Culver*, 945 A.2d at 7.

[21] *See, e.g., Culver*, 956 A.2d at 7 (finding that Probation officers did not have reasonable suspicion when "the probation officers accepted, without conducting any independent analysis, and relied on information police received from an anonymous caller whose 'tip' made it clear the caller had no personal information about Culver consistent with illicit drug activity'); *see also Alabama v. White*, 496 U.S. 325, 332 (1990) (holding that police had reasonable suspicion to stop a vehicle based on an anonymous tip because "the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller" and because "'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 245 (1983))).

8

For example, in *Sierra v. State*, an unidentified Department of Justice employee relayed a tip to Probation from a confidential informant that Fernando Sierra possessed drugs in his residence.[22] The Department of Justice employee did not convey to Probation the confidential informant's identity or whether the confidential informant was past proven reliable.[23] Additionally, the tip provided "only observable information" that did not demonstrate that the informant had actual knowledge of illegal activity.[24] A Probation officer completed an Arrest/Search Checklist, and a Probation supervisor approved a warrantless administrative search of Sierra's residence.[25] Sierra moved to suppress the evidence seized at his residence and statements made by him as a result of the search.[26] The Delaware Supreme Court found that the tip did not establish reasonable suspicion to support a search of Sierra's residence.[27]

In light of *Sierra* and other similar cases,[28] the State could not credibly argue that at the time Officer Walker sought search authorization, he had reasonable suspicion to support a search of Defendant's residence. Thus, to support its argument that the Motion to Suppress should be denied, the State relies on Defendant's admission that there was a gun in his residence.

---

[22] *Sierra*, 958 A.2d at 827.
[23] *Id.*
[24] *Id.* 831.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 833.
[28] *See supra* note 20.

Delaware law requires that a search of a probationer's residence by a Probation officer be supported by reasonable articulable suspicion and that Probation officers comply with Probation procedures.[29] As explained in *Fuller v. State*, strict compliance with Probation procedures is not required.[30]

In *Fuller*, Probation officers received information from a past proven reliable informant that a probationer in possession of a firearm was selling crack cocaine in Wilmington's Hilltop area.[31] The past proven reliable informant described the probationer's physical appearance and reported that the probationer drove an older model red Volvo with tinted windows.[32] The investigating Probation officer discussed and considered the tip with his supervisor and, thereafter, the supervisor gave the officer authorization r to stop the vehicle.[33] The next day, the Probation officer observed an older model red Volvo in the Hilltop area and verified that the vehicle was registered to a probationer.[34] With the assistance of police, the Probation officer stopped the vehicle, contacted his supervisor to confirm authorization to search the vehicle, and then searched the vehicle.[35] Two bags of crack cocaine were seized from the vehicle.[36] The Superior

---

[29] *Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).
[30] *Id.* at 291.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 291–92.
[34] *Id.* at 291.
[35] *Id.*
[36] *Id.*

Court held, and the Supreme Court affirmed, that the officers had probable cause to believe that there was contraband in the vehicle at the time of the stop.[37]

The defendant in *Fuller* argued that the evidence seized from his car should be suppressed because—even though the Probation officer obtained approval to stop and search the vehicle from his supervisor—the Probation officer did not fill out Probation's Arrest/Search Checklist and did not conduct a face-to-face case conference with his supervisor before stopping and searching the vehicle.[38] The Delaware Supreme Court found the search reasonable under the United States and Delaware Constitutions, and held "[t]o the extent that the officers departed from departmental guidelines, the departure did not render the search unconstitutional."[39] In support of this holding, the Supreme Court explained:

> The purpose of the regulations is to ensure that the Department has sufficient grounds before undertaking a search. The individual procedures advance that goal but are not independently necessary, as demonstrated by the fact that the regulations explicitly state exceptions for when the search checklist need not be used.[40]

As to the facts of the case in *Fuller*, the Supreme Court noted:

> [The Probation officer] twice received supervisor approval to conduct the search—first, after discussing the information contained in the tip before the subject vehicle was located and second, after a vehicle matching the description had been found and officers had confirmed that it was registered to a probationer. In obtaining that approval, the

---

[37] *Id.* at 291–92.
[38] *Id.* at 291.
[39] *Id.*
[40] *Id.* at 292.

11

officers and the supervisor considered the information that the Department had and whether it provided sufficient grounds to search.[41]

The Supreme Court concluded that the officers' failure to follow each technical requirement of the regulations before searching did not render the search unreasonable because the officers did satisfy "those that affect the reasonableness inquiry."[42]

The State relies on *Fuller* to argue that Officer Walker sufficiently complied with Probation procedures by receiving supervisory approval and, thereafter, acquiring reasonable suspicion.[43] But, the State fails to grapple with a far more pertinent case: *Culver v. State.*[44]

In *Culver*, an anonymous caller informed police that Jeffrey Culver was involved in drug activity.[45] The caller gave police a description of Culver, Culver's address, and stated that Culver drove a silver Mercedes Benz, but the informant did not have any personal knowledge or contact with Culver to support the conclusion that Culver was engaged in drug activity.[46] A police officer, Lt. Odgen, went to Culver's address, where he observed a silver Mercedes Benz in

---

[41] *Id.*
[42] *Id.*
[43] D.I. 10 at 7.
[44] 956 A.2d 5 (Del. 2008).
[45] *Id.* at 8.
[46] *Id.*

12

which Culver was a passenger.[47] Lt. Ogden stopped and searched the vehicle, and the search revealed nothing incriminating.[48] "Undeterred by an evidently flimsy and unreliable tip followed by an utterly fruitless search," Lt. Ogden reported the tip to Probation, and Probation officers decided to conduct a warrantless administrative search based on Probation's receipt of information from a "reliable source," i.e. Lt. Ogden.[49] Probation officers searched Culver's house and seized a firearm.[50]

In *Culver*, the Delaware Supreme Court addressed, for the first time, "the proper procedures that parole and probation officers must follow after they receive a tip from police officers under their statutory authority to search probationers."[51] The majority of the Delaware Supreme Court agreed that Probation Procedure 7.19 "requires probation officers to assess any 'tip' relayed to them and *independently determine* if reasonable suspicion exists that would, in the ordinary course of their duties, prompt a search of a probationer's dwelling."[52] This independent determination requires Probation officers to "rationally assess the facts made

---

[47] *Id.*

[48] *Id.*

[49] *Id.* at 8–9. In *Culver*, the Probation supervisor testified that the decision to search was based on: (1) Culver's failed drug tests; (2) Culver's missed curfews; and (3) the supervisor's receipt of information from Lt. Ogden. *Id.* at 9. However, neither the supervisor, nor Culver's Probation officer "identified any known fact before Lt. Ogden's call that would have, in the ordinary course of business, triggered an administrative search." *Id.*

[50] *Id.*

[51] *Id* at 7.

[52] *Id.* at 7 (emphasis added).

13

known to them *before* reaching the critical conclusion that there is a reasonable basis to search a probationer's dwelling."[53] Further, the Delaware Supreme Court emphasized that Probation officers "must not 'rely on police officers *vouching* for anonymous callers with no proven track record for supplying credible, reliable information.'"[54] Rather, a Probation officer who receives a tip from the police must obtain enough information from the police, such that the Probation officer can "independently and objectively assess the reasonableness of the inferences to be drawn from the caller's tip."[55] As the Supreme Court explained:

> If probation officers do not engage in an independent analysis of the reliability of facts supporting an "informant's" tip, they would contravene Procedure 7.19 VI(F)(3). The probation officers would thereby become essentially surrogates for the police, conveniently used when the police had no lawful authority to act on their own.[56]

Because the Supreme Court based its decision on the probation officers' violation of a clear statutory mandate, the Court did not reach any constitutional questions.[57]

Similarly, in *Sierra*, which relied upon *Culver*, the Delaware Supreme Court held that the Probation officers had failed to meet the requirements of Probation and Parole Procedure 7.19 and the evidence seized during the search should be suppressed because the Probation officers failed to independently investigate and

---

[53] *Id.* at 11.
[54] *Id.* at 13.
[55] *Id.*
[56] *Id.*
[57] *Id.* at 7 n.1.

14

assess a tip relayed by an unidentified Department of Justice employee.[58] The Supreme Court explicitly stated that the basis for suppression was an independent state law basis,[59] and the Supreme Court reiterated its admonition in *Culver* that "to allow evidence obtained in violation of Procedure 7.19 'would render 11 *Del. C.* § 4321 and the regulations promulgated under it meaningless.'"[60] Thus, under *Culver* and *Sierra*, it is incumbent on Probation officers to independently determine if the facts known to them—at the time the decision to authorize the search is made—support a finding of reasonable suspicion.

In this case, Officer Walker sought search authorization based on the tip of an informant who was indisputably not past proven reliable. Officer Walker "corroborated" the tip only to the extent of ascertaining, through Detective Rosaio, that the Defendant was the person accused, that he was a probationer, and that he lived at the identified address. Critically, Officer Walker never corroborated the tip with regard to the assertion of *illegality*.[61] Prior to responding to Defendant's residence, armed with an approved search authorization and accompanied by four

---

[58] *Sierra*, 958 A.2d at 832.

[59] *Id.* at 832 n.35.

[60] *Id.* at 832–33 (quoting *Culver*, 956 A.2d at 7).

[61] *See Florida v. J.L.*, 529 U.S. 266, 272 (2000) (describing a tip that did not support a finding of reasonable suspicion to support a *Terry* stop: "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.").

15

members of the Wilmington Police Department, Officer Walker never attempted to ascertain, either by personally speaking to the informant or by eliciting additional information from Detective Rosaio, whether the tip was based on personal knowledge, whether the informant could provide additional details that might establish the reliability of the tip, or the reasons that the informant was supplying the information.[62] While the informant's motivation is unknown, Detective Rosaio's purpose is plain: to have Probation officers search under circumstances where Wilmington Police had no basis to undertake a search on their own.[63]

Had Officer Walker and Officer Willoughby "independently analyzed the information consistent with their own agency's regulations" as required by *Culver*,[64] they would have concluded that a warrantless administrative search could not be performed without further investigation. Contrary to the State's argument, the failure to apply independent judgment to whether reasonable suspicion exists is not equivalent to the failure to follow each technical requirement of the search regulations. Thus, *Fuller* is not applicable here. Furthermore, under the State's argument, the Court would have to uphold a search in a case where a Probation officer blindly relied on a patently unreliable and uncorroborated police tip and completely failed to apply independent judgment to whether reasonable suspicion

---

[62] *Culver*, 956 A.2d at 11 ("Procedure 7.19 specifically requires: In evaluating reliability of information, was [1] the information detailed, [2] consistent, [3] was the informant reliable in the past, and [4] consider the reason why the informant is supplying information.").
[63] *Id.* at 13.
[64] *Id.* at 7.

16

exists, as long as the right boxes were checked and the Probation officer managed to stumble upon reasonable suspicion before the search occurred.

The Court finds that, at the time Officers Walker and Willoughby reached the critical—and incorrect—conclusion that there was a reasonable basis to search Defendant's dwelling, they failed to rationally assess the facts known to them. Officer Walker did not arrive at Defendant's house, with four Wilmington Police officers, to investigate whether the uncorroborated tip was reliable, he arrived to search. Additionally, the Court finds that but for Detective Rosaio's tip, Probation officers would not have searched Defendant's residence. Under *Culver* and *Sierra*, because the Probation officers failed to comply with Probation and Parole Procedure 7.19, the evidence seized must be suppressed.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **GRANTED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

17