Branden WALLACE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 314, 2011.

Supreme Court of Delaware.

Submitted: Oct. 10, 2012.
Decided: Dec. 31, 2012.

Court Below—Superior Court of the State of Delaware, in and for New Castle County, Cr. I.D. No. 1004000821.

Michael W. Modica, Esquire, Wilmington, Delaware, for appellant.

Paul R. Wallace, Esquire (argued), Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice:

The defendant-appellant, Branden Wallace ("Wallace"), appeals from his Superior Court judgments of conviction for Trafficking in Cocaine, Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, and Possession of a Firearm by a Person Prohibited. Wallace argues that the Superior Court erred in denying his motion to suppress the evidence seized by the police after conducting a routine probation and parole home visit compliance check at his residence. Wallace contends the search and seizure violated the Fourth and Fourteenth Amendments of the United States Constitution. Accordingly, Wallace argues, the evidence obtained as a result of the illegal search should have been suppressed.

We have concluded that Wallace's contention is without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

On April 1, 2010, members of the Governor's Task Force ("GTF"), which included Probation Officer Philip Graham ("P.O. Graham"), Probation Officer James Kelly ("P.O. Kelly"), and police officers, were conducting routine home visit compliance checks in the Brookside, Newark area. Home visit compliance checks are authorized by Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure Number 7.3 ("Procedure 7.3"). At approximately 9:40 p.m., the GTF arrived at 79 Chaucer Drive to complete a home visit compliance check, because it was listed as the address of two Level II probationers, Wallace and co-defendant Johanna Garcia ("Garcia").

Wallace had been recently charged with Offensive Touching against Garcia, resulting in a No Contact Order against Wallace. Consequently, Wallace's continued residence at 79 Chaucer Drive would be a violation of the No Contact Order and, therefore, a violation of his probation. Accordingly, the compliance check was conducted to determine Wallace's current residence.

At the time of Wallace's Offensive Touching charge, his probation officer, not

P.O. Graham or P.O. Kelly, was advised of the No Contact Order and Wallace provided him with a new residence address. However, Wallace's new address was not entered into the Delaware Criminal Justice Information System ("DELJIS"). Therefore, it was not available to P.O. Graham or P.O. Kelly on March 31, 2010, when a field sheet was printed for the purpose of conducting the routine home visit compliance check.

Upon arrival at 79 Chaucer Drive, P.O. Graham, accompanied by P.O. Kelly and Officer Eric Huston of the Delaware State Police, knocked on the front door of the residence. P.O. Graham also announced himself as a probation officer. Devonta Garcia ("Devonta"), co-defendant Garcia's fourteen-year-old son, opened the door wide, which P.O. Graham understood as an invitation to enter the premises.

At or near the threshold, P.O. Graham asked Devonta whether Wallace or Garcia were home.[1] Devonta answered in the negative. P.O. Graham entered and proceeded to conduct a "safety sweep" of the house to ensure that no one else was on the premises.[2] The only persons at the residence were Devonta, his sister Shavonta Garcia, and Devonta's friend Shane Minchew—all of whom were minors and playing a video game at the time of the compliance check.

During the "safety sweep" of the home, also considered to be part of the Procedure 7.3 home visit compliance check "Walk-Through," P.O. Graham entered Garcia and Wallace's bedroom. There he noticed what appeared to be a bag of cocaine in plain view on a bedside table. P.O. Graham then commenced Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure Number 7.19 ("Procedure 7.19")[3] in order to execute an administrative search of the residence.

In accordance with Procedure 7.19, P.O. Graham immediately held a case conference with his supervisor, P.O. Kelly. Together, they reviewed the entire Procedure 7.19 Search Checklist. Thereafter, P.O. Graham received permission to conduct an administrative search of the residence. He also received permission to search Wallace's car parked in the driveway of 79 Chaucer Drive.

The administrative search of the residence yielded 1.9 grams of crack cocaine, 1.2 grams of powder cocaine, 26 bags of heroin, hypodermic needles and syringes along with other packaging materials, morphine and adderall pills, a handgun, ammunition to a different handgun, and $2,251 in

---

1. The record reflects that the Superior Court made two factual misstatements in its March 4, 2011 opinion. First, Devonta never said, "my mom and Branden aren't home," but rather answered, "no" when asked by Officer Graham whether Branden or Garcia were home. Second, although the court noted that Officer Graham asked Devonta if the officers could enter the home, no witness for the State or the defendant testified that permission to enter was ever requested. These misstatements were later corrected, though not explicitly, on remand in *State v. Wallace*, C.A. No. 1004000821 (Del.Super.Ct. May 17, 2012).

2. It is unclear why this "search" was justified as a safety sweep as opposed to a "Walk-Though," pursuant to Procedure 7.3, promulgated under the authority granted by title 11, section 4321 of the Delaware Code (Probation and parole officers).

3. Procedure 7.19 § VI.E. ("Absent exigent circumstances, the decision to search an offender or his living quarters should only be made after discussing the matter with your supervisor.... Generally, the following factors should be considered when deciding whether to search. 1. The Officer has knowledge or sufficient reason to believe the offender possesses contraband.... 2. [or] is in violation of probation or parole.").

cash. The administrative search of the car produced an additional 310.7 grams of powder cocaine and a loaded handgun, matching the type of ammunition found in Wallace and Garcia's bedroom.

Wallace was indicted on June 21, 2010, and was arrested in July 2010. On August 31, 2010, Wallace moved to suppress evidence discovered as a result of the administrative searches of 79 Chaucer Drive and his vehicle. After a suppression hearing and supplemental briefing, the Superior Court denied Wallace's motion to suppress. After a stipulated non jury trial, the Superior Court found Wallace guilty of Trafficking in Cocaine, Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, and Possession of a Firearm by a Person Prohibited (the remaining charges were dismissed). Wallace was sentenced to eight years of incarceration at Level V for Trafficking in Cocaine, five years of incarceration at Level V for Possession of a Firearm by a Person Prohibited, and five years of incarceration at Level V, to be suspended after three years for two years Level IV, to then be suspended after six months for Level III probation, for Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance.

Wallace then filed this direct appeal. We remanded Wallace's appeal to the Superior Court with directions that it address: "whether Devonta Garcia or Wallace himself consented to entry of the premises;" and whether "the application of Department of Correction Probation and [Parole] Policy, Procedure 7.3 to this case is consistent with the U.S. Constitution." On remand, the Superior Court found that consent to enter the home was given by Devonta Garcia at the time of the compliance check, consent was given by Wallace as part of his conditions of supervision, and that Procedure 7.3 is constitutional.

### Standard of Review

■ Wallace claims that the Superior Court erred in denying his motion to suppress the evidence found during the administrative searches of his residence and vehicle by the probation officers. Specifically, he claims that the GTF did not have consent to enter 79 Chaucer Drive in the first instance, and second, that the GTF were not permitted to enter (Procedure 7.3) or search (Procedure 7.19) the residence without reasonable suspicion. We review the Superior Court's factual findings for clear error.[4] However, we review questions of law de novo.[5]

### Devonta Garcia Consented to Entry

■ On remand, the Superior Court found that Devonta Garcia, upon hearing P.O. Graham announce "probation and parole," opened the front door of the home wide enough to be considered an implied invitation to enter. There was no finding that any police coercion or show of force occurred to render consent involuntary. Devonta did not appear scared, intimidated, hesitant, or surprised by the officers' presence. Additionally, the Superior Court found that Devonta had authority to consent to entry because: the home was his permanent place of residence; he was fourteen and a half years old at that time; and he had authority to invite a friend over without parental approval.

The Superior Court did not address the factors enumerated by this Court in *Cooke v. State.*[6] That is not fatal to the State's

---

4. *Murray v. State,* 45 A.3d 670, 673 (Del.2012) (citing *Loper v. State,* 8 A.3d 1169, 1172 (Del. 2010)).

5. *Id.*

6. *Cooke v. State,* 977 A.2d 803, 855 (Del. 2009).

case, however, because the Superior Court was not asked to render an opinion on whether Devonta consented to a *search*, but rather on whether Devonta consented to *entry*. Therefore, the *Cooke v. State* precedent addressing consent to search is not relevant to this appeal.

The Superior Court found that Devonta implicitly consented to entry by first opening the front door in response to P.O. Graham's announcement, and by subsequently acquiescing to his entrance. The record supports the Superior Court's determination that Devonta Garcia, the fourteen-year-old son of co-defendant Garcia, and a co-inhabitant of the 79 Chaucer Drive residence, consented to P.O. Graham's entry. At this point, P.O. Graham was lawfully empowered to "Walk Through" the residence to conduct a home visit compliance check pursuant to Procedure 7.3.

### Procedure 7.3

■ Procedure 7.3 § V.G.2. states, "The home visit is a Walk–Through of the residence and does not permit searching the residence; such as, opening bureau drawers, kitchen cabinets, searching the closets, et cetera without having some reasonable grounds as listed in procedure *7.19* ...." Section V.G.3. elaborates that, "The Walk–Through permits you to observe anything in plain view; such as, contraband lying on a table, pornography on a computer screen, a gun hanging on the wall or other reasonable grounds."

Wallace was prohibited from having any contact with Garcia as a result of the Offensive Touching charge against him. P.O. Graham and the GTF were aware, based on extant information in the DELJIS system, that Wallace and Garcia, both Level II probationers, each listed 79 Chaucer Drive as their residence. Accordingly, this was not a suspicionless search of 79 Chau-

cer Drive, but rather a home visit compliance check to determine that the No Contact Order was not being violated, and therefore, that the terms of Wallace's probation were also not being violated.

This constituted sufficient reason for P.O. Graham to conduct a home visit to ensure compliance with Wallace's conditions of probation, pursuant to Procedure 7.3. As P.O. Graham was walking through the residence, he observed contraband in plain view. P.O. Graham subsequently contacted P.O. Kelly before conducting an administrative search, pursuant to Procedure 7.19.

### Consent and United States Constitution

■ On April 1, 2010 (the day of the search), Wallace was on Level II probation. Wallace's probation was subject to numerous conditions, including mandatory drug testing, obtaining authorization to leave the State, reporting any changes of residence or employment, payment of a supervision fee, and complying with any special conditions imposed at any time by his probation officer. As a specific special condition of his supervision, Wallace consented to "report to [his] supervising officer at such times and places as directed, and permit the probation/parole officer to enter [his] home and/or visit places of employment," and be "subject to arrest and to a search of [his] living quarters, person or vehicle without a warrant at any time by a probation/parole officer."

The record reflects that Wallace consented to three separate types of residential searches as conditions of his probation. Wallace contends that all three of his consents apply to searches based on reasonable suspicion. First, he agreed to Procedure 7.3's requirement for home visit "Walk–Through" compliance checks. Second, he agreed to administrative searches in accordance with Procedure 7.19. Third,

he gave consent to search his residence without a warrant as a specific condition of his probation. We need not address Wallace's third form of consent because his consents pursuant to Procedures 7.3 and 7.19 are dispositive.

In *United States v. Knights*,[7] the United States Supreme Court held that a probationer who consents to being searched as a condition of probation can be searched based merely on reasonable suspicion.[8] In *Knights*, the defendant was on probation for a summary drug offense, and as condition of his probation he consented to "[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer."[9] Police officers conducted a search of Knights' home based on reasonable suspicion that he was involved in a series of acts of vandalism, and also because he was subject to a warrantless search as a condition of his probation.[10] The search revealed evidence that led to Knights' arrest.[11]

The Supreme Court held that the search was constitutional under the totality of the circumstances, primarily because of the probation search condition.[12] The search condition was deemed a reasonable condition because it furthered the dual goals of rehabilitation and protecting society from future criminal violations, and because the probation order clearly and unambiguously expressed the search condition—thus subordinating Knights' significantly diminishing expectation of privacy to the State's substantial interest.[13]

Here, the record evidence supports the Superior Court's finding that there was reasonable suspicion of a violation of probation by Wallace to justify this particular home visit compliance check under Procedure 7.3. Specifically, the place of residence listed for Wallace in DELJIS matched the place of residence of Garcia, a person who Wallace was to have no contact with under a No Contact Order. We hold that this alone was sufficient to constitute a reasonable suspicion of non-compliance to support a home visit and Walk–Through under Procedure 7.3.

When P.O. Graham arrived to conduct the compliance check, Devonta Garcia opened the door for P.O. Graham to enter. At that point P.O. Graham, having been lawfully admitted, was then permitted to "Walk–Through" the residence to ensure no violations of probation were occurring. Wallace and Garcia had both consented to Procedure 7.3 periodic home visit compliance checks as a condition of their probations. During the "Walk–Through," P.O. Graham noticed in plain view what he believed to be contraband. He then followed the proper protocol to conduct a Procedure 7.19 administrative search.

■ This Court has held that probation officers need reasonable suspicion or reasonable grounds to justify an administrative search of a residence or car.[14] Probation officers are presumed to have acted reasonably when their conduct is in sub-

---

7. *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

8. *Id.* at 121, 122 S.Ct. 587.

9. *Id.* at 114, 122 S.Ct. 587.

10. *Id.* at 115, 122 S.Ct. 587.

11. *Id.* at 116, 122 S.Ct. 587.

12. *United States v. Knights*, 534 U.S. at 118, 122 S.Ct. 587.

13. *Id.* at 119–20, 122 S.Ct. 587.

14. *Murray v. State*, 45 A.3d 670, 678 (Del. 2012).

stantial compliance with Department of Correction procedures.[15] While P.O. Graham was acting in accordance with Procedure 7.3, he saw contraband in plain view. That provided reasonable suspicion to conduct a Procedure 7.19 administrative search of the residence and the car. These actions were consistent with the Supreme Court's holding in *United States v. Knights* and this Court's holding in *Murray v. State.*

### Conclusion

The Superior Court properly denied Wallace's motion to suppress. The judgments of the Superior Court are affirmed.

---

**15.** *Id.; see also Pendleton v. State,* 990 A.2d 417, 420 (Del.2010); *Sierra v. State,* 958 A.2d 825, 828–29 (Del.2008); *Fuller v. State,* 844 A.2d 290, 292 (Del.2004).