# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,  )
                                   )
v.                             )
                                   )     ID No. 1004000821
BRANDEN WALLACE,  )
                                   )
       Defendant.  )

Date Submitted: August 28, 2017
Date Decided: September 27, 2017

***Upon Defendant's Motion for Postconviction Relief***
**DENIED**

## <u>MEMORANDUM OPINION</u>

Carolyn S. Hake, Deputy Attorney General, Department of Justice, Attorney for the State of Delaware

Patrick J. Collins, Esquire, Collins & Associates, Attorney for Defendant

**Rocanelli, J.**

Branden Wallace ("Defendant") was on probation when Probation & Parole conducted an administrative search that resulted in new charges as well as allegations of violation of probation. Defendant was detained on July 23, 2010.

Defendant was sentenced for a violation of probation in Case No. 0907027836 by Order dated September 22, 2010, effective July 23, 2010, 2 years at Level V in connection with drugs and drug paraphernalia located during the administrative search. The finding of violation of probation and sentence imposed were affirmed by the Delaware Supreme Court.[1]

The drugs and drug paraphernalia located during the administrative search also resulted in new charges in Case No. 100400082 ("New Offenses"). Defendant agreed to a stipulated bench trial for the New Offenses based, in part, on incorrect information that the minimum mandatory time he faced was 14 years.

Defendant stipulated to a non-jury trial on three of the new charges[2] — Trafficking, PWID, and PFBPP — in exchange for the State's promise to not seek habitual status and to recommend a sentence of not more than 14 years, which was represented to Defendant to be the required minimum mandatary period of incarceration.[3] The stipulated non-jury trial was held on March 8, 2011, and the

---

[1] *Wallace v. State*, 31 A.3d 77 (Del. 2011)

[2] The State entered a *nolle prosequi* on the remaining charges.

[3] The State mistakenly represented that the minimum mandatory sentence for the three charges was 14 years when it was actually 16 years. This mistake was not brought to Defendant's attention until sentencing.

Court found Defendant guilty of all three charges. On June 10, 2011, the Court sentenced Defendant to 16 years at Level V followed by decreasing levels of supervision.[4] The Supreme Court affirmed the Superior Court's decision on remand on December 31, 2012.[5]

Defendant filed his first motion for postconviction relief on June 10, 2013 ("Initial Rule 61 Motion"). Defendant filed an amended motion for postconviction relief and a request for appointment of counsel on October 1, 2013. Christopher Tease was appointed as counsel, and filed an opening brief in support of the motion for postconviction relief on February 11, 2014. Tease then filed an amended motion for postconviction relief on August 18, 2014. After Tease ceased practicing law, the Court appointed Donald Roberts as new counsel to represent Defendant in his motion for postconviction relief. Shortly thereafter, Roberts closed down his law practice. As a result, the Court appointed Patrick Collins ("Rule 61 Counsel") who filed an amended motion for postconviction relief on April 17, 2017 ("Rule 61 Motion"). The State opposes Defendant's Rule 61 Motion.

---

[4] The minimum mandatory for the Trafficking charge was eight (8) years at Level V. Due to Defendant's prior convictions, the minimum mandatory for the PWID charge was three (3) years and the minimum mandatory for the PFBPP charge was five (5) years.

[5] *Wallace v. State*, 62 A.3d 1192 (Del. 2012).

2

# Factual Background

## A. Home Visit Compliance Check

This case arose out of a home visit compliance check conducted on April 1, 2010.[6]  Defendant had recently been charged with Offensive Touching against Johanna Garcia ("Garcia"), which had resulted in a No Contact Order against Defendant.  Defendant and Garcia were both on Level II probation, and they each listed their address as 79 Chaucer Drive, Newark, Delaware ("Residence").  Because of the No Contact Order, Defendant's presence at this Residence with Garcia would be a violation of his probation and a violation of the Court's No Contact Order.[7]

Members of the Governor's Task Force conducted a home visit compliance check at the Residence pursuant to Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure Number 7.3 ("Procedure 7.3").  The compliance check was conducted by Probation Officer James Kelly ("PO Kelly"), Probation Officer Philip Graham ("PO Graham"), and Officer Eric Huston of the Delaware State Police ("Officer Huston").  PO Graham announced himself as a probation officer and knocked on the door of the Residence.  Devonte Garcia, Garcia's 14-year old son, answered and opened the door wide, which PO Graham understood to be an invitation to enter.

---

[6] *See Wallace v. State*, 62 A.3d 1192 (Del. 2012) (explaining the facts of this case on direct appeal).
[7] ID No. 0907027836.

3

Devonte Garcia informed PO Graham that neither Defendant nor Garcia were home. PO Graham then conducted a "safety sweep" of the home under Procedure 7.3 to ensure that no other persons were present. PO Graham entered Defendant and Garcia's bedroom during the "safety sweep" and saw what appeared to be a bag of cocaine in plain view. As a result, PO Graham invoked Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure Number 7.19 ("Procedure 7.19") to conduct an administrative searches of the Residence and Defendant's vehicle. The administrative search of the Residence resulted in the seizure of 1.9 grams of crack cocaine, 1.2 grams of powder cocaine, 26 bags of heroin, hypodermic needles and syringes, morphine and Adderall pills, a handgun, ammunition to another handgun, and $2,251 in case. The administrative search of the vehicle resulted in the seizure of 310.7 grams of powder cocaine and a loaded handgun. Defendant was indicted on June 21, 2010.

## B. The Motion to Suppress and the Plea Offers

Because Defendant was already on probation at the time of his indictment and arrest,[8] he faced both the new charges and the violation of probation ("VOP") stemming from the new charges. Defendant was placed on a fast track VOP calendar in accordance with the Superior Court's policy at that time, and his hearing was scheduled for September 22, 2010 ("Fast Track VOP Hearing"). Before the date of

---

[8] ID No. 0907027836.

4

Defendant's Fast Track VOP Hearing, his first attorney, Beth Savitz, filed a Motion to Suppress the evidence found at the Residence. Michael Modica then entered his appearance on behalf of Defendant ("Trial Counsel").

While the Motion to Suppress was pending, and prior to Defendant's VOP Hearing, the State offered a plea to resolve both Wallace's VOP and the new charges ("Initial Plea Offer"). The Initial Plea Offer would have allowed Defendant to plead guilty to Trafficking in exchange for the State's recommendation of 8 years' incarceration. Trial Counsel wrote to Defendant on September 10, 2010 to explain the VOP hearing and the Initial Plea Offer. In the letter, Trial Counsel also wrote, "[The Motion to Suppress] states strong legal grounds and I am optimistic that we will win."[9]

Trial Counsel sent a second letter to Defendant on September 16, 2010 in which Trial Counsel explained the terms of the Initial Plea Offer in more detail, and the consequences of not accepting. Trial Counsel stated that future plea offers "are just going to get worse."[10] In addition, Trial Counsel explained that the risk of losing the suppression hearing was that all of the evidence found in the Residence and Defendant's vehicle would be admitted as evidence at trial.[11] Trial Counsel also explained that, if Defendant were convicted, he could be declared an habitual

---

[9] Defendant's Am. Mot. For Postconviction Relief, Apr. 17, 2017, at A680.
[10] Trial Counsel Aff. Ex. A, at 1.
[11] *Id.* at 2.

5

offender and receive a mandatory life sentence.[12] Trial Counsel wrote, "While I believe that we have strong grounds to support the suppression motion, I cannot guarantee the result."[13] He told Defendant that there was a "tremendous risk in proceeding to trial," and asked Defendant to contact him immediately if Defendant decided to accept the Initial Plea Offer. Defendant ultimately rejected the Initial Plea Offer, and the Court sentenced him to two (2) years' incarceration for the VOP at the Fast Track VOP Hearing.[14]

The Court held the suppression hearing on January 21, 2011. The State made a second plea offer to Defendant prior to the start of the suppression hearing, which included the State's agreement that the State would recommend no more than 7 years' incarceration ("Second Plea Offer"). Defendant also rejected the Second Plea Offer. At the start of the hearing, the State told the Court about the Second Plea Offer, explained that the State would seek a mandatory life sentence for Defendant if he was convicted, and asked the Court to engage in a colloquy with Defendant.[15] Trial Counsel stated that Defendant understood the Second Plea Offer, and the risk in not accepting it, but had decided to continue with the suppression hearing.[16] The Court then asked Defendant if Trial Counsel's representations were correct and if

---

[12] *Id.*
[13] *Id.*
[14] ID No. 0907027836.
[15] Defendant's Am. Mot. For Postconviction Relief, Apr. 17, 2017, at A72.
[16] *Id.*

Defendant understood that if he were convicted, the State would seek a mandatory life sentence.[17] Defendant stated that he understood, and the Court continued with the suppression hearing.[18]

The main issue before the Court at the suppression hearing was whether 14-year-old Devonte Garcia consented to the search of the Residence. The Court ultimately denied the motion to suppress, but did so on the grounds that the officers had reasonable articulable suspicion to enter the Residence. The Court did not address the consent issue. Defendant was subsequently convicted of Trafficking, PWID, and PFBPP at a stipulated non-jury trial and sentenced to 16 years' incarceration on the new charges, in addition to the 2 years at Level V already imposed for the VOP.[19]

## C. Defendant's Direct Appeal

Defendant filed a direct appeal with the Delaware Supreme Court on June 27, 2011 addressing two issues related to the Court's denial of the motion to suppress. First, Defendant argued that the Court decided the motion to suppress before the hearing took place and thereby violated his right to a fair and impartial suppression hearing. Second, Defendant argued that the Court applied the wrong legal standard

---

[17] *Id.* at A73.

[18] *Id.*

[19] After review, and pursuant to Rule 35 of the Delaware Rules of Criminal Procedure, the Court finds that it is in the interest of justice to modify Defendant's sentence on the VOP. The Court has done so in a separate order.

in concluding that reasonable articulable suspicion upheld the entry into the Residence rather than addressing the issue of consent.

On March 20, 2012, the Supreme Court remanded the case back to the Superior Court for a consideration of two issues not addressed. First, the Supreme Court asked the Superior Court to consider whether Devonte Garcia or Defendant consented to entry of the Residence. Second, the Supreme Court asked the Superior Court to consider the constitutionality of Procedure 7.3.

The Superior Court issued its decision on remand on May 17, 2012. The Superior Court concluded that Devonte Garcia consented to entry by opening the door wide when the officers knocked and that Procedure 7.3 was constitutional. The Supreme Court affirmed the Superior Court's decision on remand on December 31, 2012.[20] Defendant filed his Initial Rule 61 Motion on June 10, 2013.

## Defendant's Asserted Grounds for Postconviction Relief

Defendant asserts two grounds for postconviction relief in his Rule 61 Motion. First, Defendant argues ineffective assistance of counsel related to Trial Counsel's advice to Defendant regarding the plea offers. Second, Defendant argues ineffective assistance of counsel related to Trial Counsel's alleged failure to seek merger of the Trafficking and PWID sentences.

---

[20] *Wallace v. State*, 62 A.3d 1192 (Del. 2012).

8

## Procedural Bars to Postconviction Relief

Before addressing the merits of a motion for postconviction relief, this Court must consider the procedural requirements of Rule 61(i).[21] Rule 61(i)(1) requires a motion for postconviction relief be filed within one year after the judgment of conviction is final.[22] Defendant's judgment of conviction became final on December 31, 2012,[23] and Defendant filed his Initial Rule 61 Motion on June 10, 2013. Therefore, Defendant's Rule 61 Motion is not time-barred and will be considered on the merits.

## Standard of Review for Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are governed by the two-prong test established in *Strickland v. Washington*.[24] In order to satisfy Strickland, the movant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness,[25] and (2) that counsel's errors prejudiced the defendant.[26] In considering the first prong, there is a strong presumption that counsel's actions were professionally reasonable.[27] In considering the second prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors,

---

[21] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).
[22] Super. Ct. Crim. R. 60 (2013).
[23] *Wallace v. State*, 62 A.3d 1192 (Del. 2012).
[24] 466 U.S. 668 (1984).
[25] *Id.* at 688.
[26] *Id.* at 694.
[27] *Id.* at 688.

9

the result of the proceeding would have been different."[28]  Failure to prove either prong renders the claim insufficient.[29]

### Discussion

I.  **Defendant cannot establish ineffective assistance of counsel related to Trial Counsel's advice regarding the Initial Plea Offer and the Second Plea Offer.**

In *Hill v. Lockhart*, the United States Supreme Court held that *Strickland's* two-prong test applies "to challenges to guilty pleas based on ineffective assistance of counsel."[30]  The Supreme Court later applied *Strickland's* two-prong test to situations, like that at issue in the present case, in which a defendant rejected a favorable plea offer on the advice of counsel, and later received a harsher sentence than that contemplated in the rejected plea offer.[31]  Therefore, to succeed on his ineffective assistance of counsel claim, Defendant needs to show that Trial Counsel's advice regarding the Initial Plea Offer and the Second Plea Offer fell below an objective standard of reasonableness and that Defendant suffered prejudice as a result.

---

[28] *Id.* at 694.
[29] *Id.* at 700.
[30] 472 U.S. 52, 58 (1985).
[31] *See Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

*A. Trial Counsel's advice regarding the Initial Plea Offer and the Second Plea Offer did not fall below an objective standard of reasonableness.*

Defense counsel have various duties and responsibilities in the plea bargaining process. First, defense counsel must communicate formal plea offers to defendants.[32] In addition, defense counsel must explain the nature of the plea offer to defendants. According to the Delaware Supreme Court, the "decision to accept a plea offer . . . must be an informed one, to be made only after full consultation with counsel."[33] However, the ultimate decision of whether to accept a plea must be made by the defendant.[34] Therefore, it is the role of defense counsel to explain the benefits and consequences of a plea offer to the defendant so that the defendant is able to make an informed decision to accept or reject.

Trial Counsel's communications with Defendant about the Initial Plea Offer and the Second Plea Offer satisfied this objective standard of reasonableness. Trial Counsel wrote to Defendant on two separate occasions to explain terms of the Initial Plea Offer. Trial Counsel explained to Defendant that future plea offers would only get worse and that Defendant was facing the possibility of a mandatory life sentence if convicted and sentenced as a habitual offender. In addition, Trial Counsel stated

---

[32] *Frye*, 566 U.S. at 145; *MacDonald v. State*, 778 A.2d 1064, 1071 (Del. 2001).

[33] *MacDonald*, 778 A.2d at 1072.

[34] *See id.* at 1071 (citing Del. Lawyers' R. Prof'l Conduct 1.2, 1.4); *See also Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (providing that the ultimate decision of whether to plead guilty belongs to the defendant and that lawyers must be careful not to coerce a defendant into acceptance or rejection of a plea).

11

at the suppression hearing that he explained to Defendant the terms of the Second Plea Offer and the State's intention to seek a mandatory life sentence for Defendant if convicted. Therefore, Trial Counsel satisfied his obligation to inform Defendant of plea offers and to counsel him about the decision to accept or reject.

In addition, Trial Counsel's statements that he was "optimistic" about the motion to suppress and that there were strong grounds to support the motion to suppress were not objectively unreasonable. Although Defendant expressed optimism to Defendant about the chance of success at the suppression hearing, he qualified this optimism by writing, "*I cannot guarantee the result.*"[35] In addition, Trial Counsel told Defendant that there was a "tremendous risk in proceeding to trial."[36]

Trial Counsel's statements are very similar to those made by defense counsel in *Burns v. State.*[37] In *Burns*, the defense counsel told the defendant, "The bottom line is that this case is one that can be won, *but it is also one that I cannot guarantee such a result.*"[38] The Delaware Supreme Court found that defense counsel provided the defendant with enough information about the plea offer to make an informed decision and held that it was "not objectively unreasonable for [defense counsel] to

---

[35] Trial Counsel Aff. Ex. A, at 2 (emphasis added).
[36] *Id.*
[37] 76 A.3d 780, 786 (Del. 2013).
[38] *Id.* (emphasis in original).

12

express his qualified opinion that the case was winnable."[39] Similarly, in this case, where Trial Counsel provided enough information about both plea offers to Defendant such that Defendant could make an informed decision, it was not objectively unreasonable for Trial Counsel to express qualified optimism about the motion to suppress.

Further, it was not objectively unreasonable for Trial Counsel to believe that there were strong legal grounds to support the motion to suppress. The main issue in the motion to suppress was whether 14-year-old Devonte Garcia gave the officers consent to enter the Residence to conduct the home visit compliance check. Defendant argues in his Rule 61 Motion that Trial Counsel's emphasis on the consent issue was unreasonable because Defendant consented to routine home visit compliance checks as part of his probation. However, at the time of the suppression hearing, there were genuine questions over whether Procedure 7.3, which authorized routine home visit compliance checks, allowed for warrantless entry, or whether the officers still needed consent to enter. To that end, there was conflicting testimony regarding whether 14-year-old Devonte Garcia gave consent to enter, and Trial Counsel had reasonable grounds to believe that this conflict could be resolved in favor of the Defendant. In addition, the legitimacy of Trial Counsel's arguments regarding consent is demonstrated by the fact that the Supreme Court remanded the

---

[39] *Id.*

13

case to the Superior Court for a determination of two issues: whether there was consent to enter and whether Procedure 7.3 was constitutional.[40] Although these issues were ultimately resolved in favor of the State, it was not objectively unreasonable for Trial Counsel to believe that there were strong legal grounds to support the motion to suppress.

B. *Defendant cannot demonstrate prejudice.*

Even if the Court assumes that Trial Counsel's advice regarding the plea offers fell below an objective standard of reasonableness, Defendant cannot demonstrate prejudice as a result. In *Lafler*, the United States Supreme Court set out the test for determining prejudice when ineffective assistance of counsel leads to the rejection of a plea offer.[41] The Court stated,

> In these circumstances, a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[42]

The Delaware Supreme Court subsequently adopted the same test for prejudice.[43]

---

[40] *See Wallace*, 62 A.3d at 1195.
[41] *Lafler*, 566 U.S. at 164.
[42] *Id.*
[43] *Burns*, 76 A.3d at 785 (adopting the prejudice test from *Lafler*).

14

Although Defendant did ultimately receive a more severe sentence than that offered in either plea offer, Defendant cannot establish that absent Trial Counsel's advice, he would have accepted either plea offer. Trial Counsel states that Defendant presented a firm position at the outset of the case that he would not accept a plea offer and that he wanted to fight the charges.[44] This suggests that regardless of Trial Counsel's advice, Defendant would still have rejected both pleas.

Additionally, the State requested, and the Court conducted, a colloquy with the Defendant prior to the start of the suppression hearing. In that colloquy, Defendant indicated that Trial counsel explained the Second Plea Offer to him and that understood he was facing mandatory life imprisonment. Defendant still rejected the plea deal. Thus, Defendant did not solely reject the plea deal on the advice of Trial Counsel. He also had the benefit of the State's representations and the Court's colloquy during the suppression hearing. Therefore, Defendant cannot establish that absent Trial Counsel's supposedly deficient advice he would have accepted the plea and, therefore, he cannot demonstrate prejudice.

**II. Defendant cannot establish ineffective assistance of counsel related to Trial Counsel's alleged failure to seek merger of the Trafficking and PWID sentences.**

Defendant cannot establish that Trial Counsel fell below an objective standard of reasonableness in not seeking merger of the Trafficking and PWID sentences.

---

[44] Trial Counsel Aff. ¶ 2.

15

Defendant was sentenced on June 10, 2011, three months before the Delaware General Assembly enacted a comprehensive revision of Delaware's drug offenses.[45] At the time of Defendant's sentencing, Delaware law allowed for separate sentences for Trafficking and PWID even though the charges arose from the same incident.[46] Indeed, in *Skyers*, the Delaware Supreme Court held that by providing penalties under both sections of the law, the General Assembly intended for a person convicted of both Trafficking and PWID to be sentenced for both crimes.[47] Therefore, it was not objectively unreasonable for Trial Counsel not to seek merger of the two crimes for sentencing, as such a request would have been contrary to the well-settled law of the time. For that reason, Defendant cannot establish ineffective assistance of counsel, and the Court need not address the prejudice prong.

In making his argument, Defendant relies on cases decided following the comprehensive revision of Delaware's drug offenses. Following this comprehensive revision, Delaware law no longer defines Trafficking and PWID as crimes. Rather, the new law creates entirely new drug offenses, which include different classifications of drug dealing and aggravated possession.[48] In cases following the change in the law, the State has conceded that drug dealing and aggravated

---

[45] Del. H.B. 19, 146th Gen. Assem. (2011) (effective September 1, 2011).
[46] *See, e.g., State v. Skyers*, 560 A.2d 1052, 1055 (Del. 1989).
[47] *Id.* ("Since the defendant in this case was convicted under both code provisions he must be sentenced for both convictions.").
[48] *See* 16 *Del. C.* § 4752-4756 (2011).

16

possession merge for the purposes of sentencing.[49] However, the change in the law does not affect the sentences for Trafficking and PWID that took place before the change. In fact, in *Melton v. State*, the Delaware Supreme Court upheld separate sentences for Trafficking and PWID two years after the change in the law.[50] Therefore, Defendant cannot rely on cases merging the sentences for drug dealing and aggravated possession, because those are not the crimes for which he was convicted.

Additionally, concurrent sentences are not permitted under the sentencing scheme. In 2014, the General Assembly amended Section 3901 of Title 11 of the Delaware Code ("Section 3901(d)") to provide, "The court shall direct whether the sentence of confinement of any criminal defendant by any court of this State shall be made to run concurrently or consecutively with any other sentence of confinement imposed on such criminal defendant."[51] However, the Delaware Supreme Court has held that Section 3901(d) does not apply retroactively.[52] Therefore, the Court does not rule that the sentences shall run concurrently.

---

[49] *See Landry v. State*, 128 A.3d 634 (Del. 2015); *Ayers v. State*, 97 A.3d 1037, 1041 (Del. 2014).
[50] 74 A.3d 654 (2013).
[51] *See* 11 *Del. C.* § 3901(d) (2014).
[52] *Fountain v. State*, 139 A.3d 837, 842-43 (Del. 2016).

## Conclusion

The Court finds that Defendant's claims for postconviction relief are without merit. Defendant cannot establish ineffective assistance of counsel related to Trial Counsel's advice regarding the plea offers and Trial Counsel's decision not to seek merger of the Trafficking and PWID sentences. Therefore, the Court concludes that Defendant's motion for postconviction relief must be denied.

**NOW, THEREFORE, this 27th day of September, 2017, Defendant's Motion for Postconviction Relief is hereby DENIED.**

**IT IS SO ORDERED.**

**The Honorable Andrea L. Rocanelli**

18