IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

v.

DARREN SWIGGETT,

Defendant.

:
:
:
:
:
:
:
:

I.D. No. 1806003762

Submitted: January 4, 2019
Decided: January 15, 2019

**ORDER**

Upon Defendant's Motion to Suppress.
*Denied.*

Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Adam D. Windett, Esquire of Hopkins & Windett, LLC, Dover, Delaware; attorney for the Defendant.

WITHAM, R .J.

## INTRODUCTION

Defendant Darren Swiggett ("Swiggett") moves this Court to suppress evidence seized as the result of a home visit conducted by members of the Delaware Department of Parole and Probation ("Probation"). Swiggett claims the evidence is subject to suppression because an unlawful, warrantless search was conducted in areas which he had a reasonable expectation of privacy and was performed without articulable probable cause. Swiggett further claims the only basis for the subsequent administrative search warrant was the evidence discovered through the unlawful, warrantless search, and as a result, all additional evidence seized is tainted as "fruit of the poisonous tree." Swiggett's final contention is that his bedroom should not have been subjected to the administrative search because he himself, was not subject to any criminal allegations at the time of the administrative search.

After considering the record, including testimony from the State's key witness, the Court finds that evidence in question was not seized as a result of an unlawful, warrantless search, and consequently, any evidence collected after the fact was not tainted as "fruit of the poisonous tree." Thus, for the forthcoming reasons, Swiggett's motion to suppress is **DENIED**.

## FACTUAL AND PROCEDURAL HISTORY

In the early afternoon of June 6, 2018, Probation Officers ("PO") Stagg, Esbenshade, and Mitchell, arrived at 255 Webbs Lane, Apartment F-24 ("Residence") in Dover, Delaware after conducting home visits with other probationers. The purpose of the officers' presence at the residence was to perform a home visit with

Swiggett, a Level 3 Delaware probationer.

At the beginning of the home visit, Officers Stagg and Esbenshade were met at the door by Michael Collier ("Collier"), another Level 3 Probationer, who did not reside at the residence. After being let into the residence by Collier, Officers Stagg and Esbenshade then began the home visit walk-through.

During the initial moments of the home visit, PO Mitchell remained outside the residence. As she waited for her colleagues, she observed an individual (later identified as Collier) on a second story balcony where she saw the individual discard an unknown object into a trash can on the balcony. PO Mitchell, thinking the activity was suspicious, inquired with and confirmed with her fellow officers that the balcony was connected to Swiggett's apartment.

PO Mitchell then joined the officers in the residence, after she was let in by Collier.[1] She first made her way through the living room common area, and then to the next common area, the balcony. Upon entering the balcony common area, she looked down into an uncovered trash can, and observed a bundle on top of the trash, wrapped in red newspaper with white plastic baggies and blue wax paper sticking out of the newspaper.[2] Based on her training and experience, PO Mitchell believed the bundle to be heroin. Swiggett and Collier were secured while PO Mitchell, pursuant

---

[1] At this point, PO Mitchell positively identified Collier as whom she observed on the balcony.

[2] Ultimately, 104 bags of heroin were discovered in the bundle viewed in the uncovered trash can.

3

to Department of Correction Procedure ("Procedure") No. 7.19, requested permission from a supervisor to conduct an administrative search of the residence.

As grounds for the administrative search, PO Mitchell cited (1) the discovery of heroin discarded by Collier; (2) Swiggett's previous history of selling illegal drugs; (3) her belief that both men were residing at 255 Webbs Lane Apt. F-24;[3] and (4) the possibility that both were conspiring to possess and sell narcotics.[4] The administrative warrant was granted subsequent to the consultation and resulted in other drugs and drug paraphernalia being seized from the residence.[5] Consequently, Swiggett was charged with Drug Dealing in violation of 16 *Del. C. §* 4752(1); Aggravated Possession in violation of 16 *Del. C. §* 4753(3); Drug Dealing in violation of 16 *Del. C. §* 4754(1); Conspiracy Second Degree in violation of 11 *Del. C. §* 512; Possession of Marijuana in violation of 16 *Del. C. §* 4764(b); and Possession of Drug Paraphernalia in violation of 16 *Del. C. §* 4771(a).

On November 29, 2018, Swiggett filed the instant motion to suppress, seeking to suppress all drug evidence seized by law enforcement during the administrative search and the State filed its response in opposition on December 5, 2018. The Court then heard oral arguments from both parties on January 4, 2019 and reserved its

---

[3] *See* St. Reply at ¶ 5 (the State has acknowledged that Collier did not reside at 255 Webbs Lane, Apt. F-24 and PO Mitchell did not testify to this ground at the hearing.).

[4] D. Ex. B at 1.

[5] D. Ex. A. at 4. 22.8 grams of crack cocaine, 9 grams of marijuana, a digital scale, and $922.00 in United States currency was found in the residence and on Collier's person.

decision.

## DISCUSSION

### A. The Heroin was seized lawfully by PO Mitchell

#### *i. PO Mitchell participated in and conducted a Home Visit.*

As a preliminary matter, the Court must first determine if PO Mitchell's actions constituted an unlawful, warrantless search of the Defendant's balcony and trash can or if it was part of an authorized home visit. Swiggett argues that PO Mitchell's actions amounted to an unlawful, warrantless search of the balcony and trash can, because there was no search warrant, administrative warrant, or *articulable probable cause*[6] to search those areas that Swiggett had a reasonable expectation of privacy. Here, the Court disagrees.

In Delaware, probationer home visits are compliance checks of the individual probationer, authorized by the Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure ("Procedure") 7.3. Procedure 7.3 derives its statutory authority from 11 *Del. C. §* 4321 and provides nine purposes for home visits, two of which are to "observe the home environment" and "monitor compliance" with supervision conditions.[7]

---

[6] D. Motion at ¶¶ 12-13 (emphasis added). However, since Swiggett is a probationer, probable cause is not the standard required in order to conduct a warrantless search. Rather, reasonable suspicion is the standard in cases of probationers. *See Sierra v. State*, 958 A.2d 825 (Del. 2008).

[7] *See* 11 *Del C. §* 4321; Procedure 7.3 § VI.H.2(a)-(I).

In *Wallace v. State*,[8] the Delaware Supreme Court confirmed the boundaries that probation officers must stay within when conducting probationer home visits:

> "[t]he home visit is a [w]alk–[t]hrough of the residence and *does not permit searching the residence*; such as, opening bureau drawers, kitchen cabinets, searching the closets, et cetera without having some reasonable grounds as listed in procedure 7.19...."[9]

Swiggett correctly states that as a probationer, he does not surrender all privacy rights simply because he is a probationer and that probation officers may only search him when they have a reasonable grounds to do so.[10] However, despite Swiggett's assertions to the contrary, the Court finds that PO Mitchell did not conduct a search of Swiggett's balcony and trash, but rather, she participated in and conducted a home visit, a condition of Swiggett's probation.

Here, Swiggett, as a Level 3 probationer in Delaware, was subject to home visits conducted by Delaware probation officers. Swiggett's agreement to and acknowledgment of the home visits as a condition of his probation, placed him on actual notice that these compliance checks would occur during his probation.[11]

The record is also silent regarding evidence that suggests PO Mitchell's actions were akin to a search, rather than a home visit walk-through. Indeed, her conduct

---

[8] 62 A.3d 1192 (Del. 2012).

[9] *Wallace*, 62 A.3d at 1196 quoting Procedure 7.3.

[10] *See Sierra*, 958 A.2d at 832.

[11] St. Ex. A.

6

suggests the exact opposite. Upon entering the Swiggett residence, PO Mitchell refrained from examining closed cabinets or closets, as she walked through two of the residence's common areas, the living room and the balcony. On the balcony, she observed heroin in the trash can. She did not dig through the trash, rather, she used only her eyes to view down into an uncovered trash bin. Regardless of Swiggett's contention that PO Mitchell searched his trash can, here, a search was unnecessary because the heroin was found on top of the trash, clearly unobstructed from PO Mitchell's vantage point.

PO Mitchell's actions were not a search. She was authorized to be at the residence by her Department's policy to conduct and/or participate in a walk-through of common areas in Swiggett's residence to ensure Swiggett's compliance with the terms and conditions of his probation.[12] Accordingly, the Court finds that PO Mitchell's actions were pursuant to the authority provided by 11 *Del C.* § 4321 and Procedure 7.3.

### ii. *The seized heroin was located in Plain View.*

The Court must next determine whether the seized heroin was located in PO Mitchell's plain view. The State relies on *Wallace* to support its contention that the seizure of the heroin was a "plain view" seizure.[13] The Court, after a diligent review of the record and transcript of the oral argument, agrees with the State and finds that

---

[12] *See* n. 7 Supra.

[13] St. Reply at ¶ 12 (the State contends that PO Mitchell "looked in the trash can" and simultaneously "located the suspected illegal contraband.").

the heroin was found in plain view.

Under the "plain view" doctrine, "[t]he mere observation of an item in plain view does not constitute a Fourth Amendment search.[14] The *Wallace* court elaborated on this in regard to evidence found by probation officers:

> "[t]he [w]alk–[t]hrough permits [a probation officer] to observe anything in *plain view*; such as, contraband lying on a table, pornography on a computer screen, a gun hanging on the wall, or other reasonable grounds."[15]

In this case, Swiggett was prohibited from possessing a controlled substance or other dangerous drugs unless lawfully prescribed.[16] PO Mitchell, during her lawful home visit, looked down into an uncovered trash can, placed in a common area, and observed, what she believed to be heroin. While the heroin itself was not in plain view, the bundle containing the heroin was unobstructed from her view by other trash. The State contended, after being directly questioned by the Court, that PO Mitchell's experience and training led her to believe that a bundle, wrapped in red newspaper with white baggies and blue wax paper sticking out of it, was heroin. The Court agrees and finds that PO Mitchell, based on her experience and training, demonstrated a reasonable belief that the bundle in her plain view was heroin.

## B. PO Mitchell had Reasonable Suspicion for Administrative Search

### i. Observation of heroin and its constitution as a probation violation is

---

[14] *Hardin v. State*, 844 A.2d 982, 985 (Del. 2004).

[15] *Wallace*, 62 A.3d at 1196 (emphasis added).

[16] St. Ex. A.

8

*sufficient to demonstrate reasonable suspicion.*

Swiggett next argues that since PO Mitchell's only basis for the administrative search warrant was unlawfully seized heroin, she did not have reasonable suspicion required for the administrative search warrant.[17] Swiggett specifically contends that *articulable probable cause* can not be established solely by her observation of Collier placing an item in the trash can[18] and furthermore, because the heroin was illegally seized, all evidence seized subsequent must be suppressed as "fruit of the poisonous tree."[19] The Court disagrees and finds that the seized heroin established reasonable suspicion for the administrative search warrant and that all evidence collected subsequent was done so lawfully.

The Delaware Supreme Court has held that probation officers are required to demonstrate reasonable suspicion or reasonable grounds to justify an administrative search of a residence or car.[20] "Reasonable suspicion" exists when the "totality of the circumstances" indicate a "particularized and objective basis" for suspecting a probationer of wrong doing.[21]

---

[17] D. Mot. at ¶¶ 15. PO Mitchell, in her application for an administrative warrant, did not specify any suspected criminal conduct on behalf of the Defendant.

[18] D. Mot. at ¶ 13.

[19] D. Mot. at ¶ ¶ 14 -16; *See also Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

[20] *Murray v. State*, 45 A.3d 670, 678 (Del.2012).

[21] *Jacklin v. State*, 2011 WL 809684, at *2 (Del. 2011) (TABLE) citing *Sierra*, 958 A.2d at 828 quoting *United States v. Arizu*, 534 U.S. 266, 273 (2002).

To ensure probationers' rights are protected in Delaware, Probation has adopted regulations governing searches of probationers.[22] Procedure 7.19 provides guidelines to consider when determining the reasonableness of a probationer search including: (1) sufficient reason to believe the offender possesses contraband; (2) sufficient reason to believe the offender is in violation of probation/parole; (3) information from a reliable informant, indicating offender possesses contraband or is violating the law; (4) information from the informant is corroborated; and (5) approval obtained from [a] Supervisor, Manager, or Director is granted.[23] Probation officers are presumed to have acted reasonably when their conduct is in substantial compliance with Department of Correction procedures.[24]

In *United States v. Knights*,[25] cited by our Supreme Court in *Wallace*, the United States (U.S.) Supreme Court held that a probationer who consents to being searched as a condition of probation can be searched based merely on reasonable suspicion.[26] In *Knights*, the defendant was on probation for a summary drug offense, and as condition of his probation he consented to "[s]ubmit his ... person, property,

---

[22] 11 Del. C. § 4321(d); *see also* Probation No. 7.19 (amended effective June 5, 2001).

[23] Probation No. 7.19.

[24] *Wallace*, 62 A.3d at 1198-99 citing *Murray*, 45 A.3d at 678; *see also Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010); *Sierra*, 958 A.2d at 828–29; *Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).

[25] *Wallace*, 62 A.3d at 1197 citing *United States v. Knights*, 534 U.S. 112 (2001).

[26] *Id. citing Knights*, 534 U.S. at 121.

10

place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer."[27] Police officers conducted a search of Knights' home based on reasonable suspicion that he was involved in a series of acts of vandalism, and also because he was subject to a warrantless search as a condition of his probation.[28] The search revealed evidence that led to Knights' arrest.[29] The U.S. Supreme Court held that the search was constitutional under the totality of the circumstances, primarily because of the probation search condition.[30] The search condition was deemed a reasonable condition because it furthered the dual goals of rehabilitation and protecting society from future criminal violations, and because the probation order clearly and unambiguously expressed the search condition—thus subordinating Knights' significantly diminishing expectation of privacy to the State's substantial interest.[31]

Here, as in *Knights*, Swiggett agreed to and acknowledged that home visits were one of the conditions and terms of his probation. He also knew that possession of heroin would clearly violate those terms and conditions. As a result, the Court

---

[27] *Id. citing Knights*, 534 U.S. at 114.

[28] *Id.* citing *Knights*, 534 U.S. at 115.

[29] *Id.* citing *Knights*, 534 U.S. at 116.

[30] *Id.* citing *Knights*, 534 U.S. at 118.

[31] *Wallace*, 62 A.3d at 1197 citing *Knights*, 534 U.S. at 119-20.

finds that PO Mitchell's observance of heroin in plain view, coupled with the fact that possession of heroin its clear violation of a condition of probation, is sufficient to demonstrate reasonable suspicion to justify conducting a Procedure 7.19 administrative search of Swiggett's residence.

> *ii. Swiggett's bedroom was lawfully encompassed by the Administrative Search.*

Finally, Swiggett argues that in the event that the Court does not suppress the evidence, there were still no reasonable grounds to justify a search of the Defendant's "living quarters."[32] He asserts that because he was not the subject of criminal allegations, as Collier was, his bedroom should not have been subject to the administrative search.[33] The Court, yet again, disagrees with Swiggett.

Here, the Court finds that Swiggett was subject to criminal allegations, namely, a violation of the terms and conditions of his probation. Additionally, the Court has already determined that PO Mitchell had reasonable suspicion to support the administrative search warrant. As such, the additional drugs and drug paraphernalia seized from Swiggett's bedroom was seized as the result of a lawfully executed administrative search warrant. Thus, the Court finds sufficient grounds have been demonstrated to show the probation officers were acting lawfully when they

---

[32] D. Mot. at ¶¶ 17-18. The Defendant also contends that there is a question of fact regarding Collier's residence, namely, that Collier does not reside with the Defendant. As stated above, this is an undisputed fact.

[33] *Id.* at ¶ 18.

conducted a search of Swiggett's bedroom.

## CONCLUSION

Based on the record, including testimony at the hearing, the Court finds the heroin seized by PO Mitchell was lawfully seized during a probationer home visit because it was in plain view and the State will be permitted to enter the heroin into evidence in its case-in-chief. Additionally, the Court finds that the seized heroin is a sufficient reasonable suspicion for the administrative search warrant. Thus, all evidence seized pursuant to the administrative search warrant shall not be suppressed as "fruit of the poisonous tree. Swiggett's motion is hereby **DENIED.**

IT IS SO ORDERED. '

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
cc:   Gregory R. Babowal, Esquire
      Adam D. Windett, Esquire