# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
                          )
                          )     I.D. No. 1802008471
     v.                    )     Kent County
                          )
IKEEN L. LOVE,          )
                          )
          Defendant.     )

Submitted: September 13, 2018
Decided: September 27, 2018

## OPINION AND ORDER

Upon Defendant's Motion to Suppress
*Denied*

Lindsay A. Taylor, Esquire of the Department of Justice, Dover, Delaware; attorney for the State of Delaware.

Zachary A. George, Esquire of Hudson, Jones, Jaywork, & Fisher, LLC, Dover, Delaware; attorney for Defendant.

WITHAM, R.J.

Before this Court is Defendant Ikeen L. Love's ("Love") Motion to Suppress evidence seized from searches conducted by the Delaware Department of Corrections Probation and Parole ("Probation") and a statement taken subsequent to his arrest. Love is charged with Possession of a Firearm by a Person Prohibited[1] and Possession of Firearm Ammunition by a Person Prohibited.[2] After careful consideration of all submissions and oral arguments, the motion is **denied**.

## FACTS

On February 12, 2018, Probation Officer (PO) Ricky Porter ("Porter") reviewed a Snap Chat video post depicting Love[3] in possession of what appeared to be three firearms[4] while parked outside a known probationer's home in a silver Ford SUV.[5] Love, a Level III probationer and a person prohibited, was subsequently identified by the Dover Gang Intelligence Unit and Delaware State Bureau of Identification (SBI). A DACS[6] search indicated that Love resided at 390 Post Blvd.,

---

[1] 11 Del. C. § 1448(a)(1).

[2] *Id.*.

[3] Porter did not know Love's identity upon his initial viewing of the social media posting.

[4] Test. at 11, 24. Porter testified he believed one of the weapons was a BB gun, and at least one of the remaining firearms was a .357 magnum. Porter's suspicion was based on the size of the barrel and Love's admission of possessing three "straps" - a slang term for a "firearm." *Cannon v. State*, 126 A.3d 641 (table, text in Westlaw), 2015 WL 6280776.

[5] Corrections R. at 2; Test. at 14. Love's SUV had a red steering wheel cover.

[6] Delaware Automated Corrections System.

Dover, but had not had a positive home visit with Probation in two years. Further investigation in DELJIS showed Love had used a phone number associated with 21 Clark's Corner in Harrington,[7] the residence of Randi Harris ("Harris"), who had a "no-contact" order against Love.[8] Porter, suspecting Love was lying about his residence due to his negative home visit history and connection to Harris, asked his partner to coordinate a drive-by of 21 Clark's Corner to verify the presence of Love's vehicle from the Snap Chat posting.[9] Harrington Police later viewed a silver Ford Expedition, with a distinctive red steering wheel cover, parked at 21 Clark's Corner on the initial drive-by and a subsequent drive-by the next day.

After receiving the subsequent verification on February 13, Porter contacted the Clark's Corner property manager and asked if she was familiar with Love or the Expedition. The manager confirmed the Expedition was parked outside the residence, but was unfamiliar with Love. Porter emailed a photograph of Love to the manager and asked if she could make any further identification. Approximately an hour later, she reported to Harrington Police that a man matching the photograph had recently departed the residence in the Expedition.

Porter, believing Love was en route to Melvin's office, contacted her and asked

---

[7] This corroborated information PO Summer Melvin received from April Trice ("Trice") on February 2, 2018. Trice, who resided at 390 Post Blvd., Dover, told Melvin that Love had moved out of the residence to 21 Clark's Corner. Love never disclosed the relocation to Melvin.

[8] Test. at 15, 27. Harris was also connected to Domingo Rodriguez, owner of the Snap Chat account that contained the video posting.

[9] Community Corrections R. at 2.

3

to be notified when he arrived. Upon his arrival later, Porter made contact with Love and obtained his consent to search the Expedition.[10] Porter's search yielded one BB-gun from the Snap Chat posting, but no other weapons. Deducing from the evidence already uncovered, Porter reasoned the outstanding weapons may be located at 21 Clark's Corner. In accordance with Probation Procedure 7.19 ("7.19") protocols, Porter obtained an administrative search warrant to search 21 Clark's Corner.[11] The search yielded a .357 magnum and ammunition, resulting in Love's arrest.[12] Love subsequently waived Miranda rights and made a statement.[13]

Love filed this motion to suppress evidence and the statement obtained as a result of those searches.[14] This Court heard oral arguments on September 13, 2018, and reserved judgment on the motion.

## DISCUSSION

### I. Reasonable Suspicion to Search Love's Residence.

Love argues that the .357 magnum seized should be suppressed, first because

---

[10] During the search, the unidentified male, later identified as Roy Stevens, stated Love had resided at 21 Clark's Corner for at least three months.

[11] Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001). Officer Porter briefed and received authorization to conduct the search of 21 Clark's Corner from PO Supervisor Joel Duquette.

[12] Community Corrections R. at 3. Medical documents and a prescription bottle made out to Love, and male clothing that Love wore in the video posting, were also discovered.

[13] Community Corrections R. at 4.

[14] D. Mot. at 6.

Porter failed to follow 7.19 and second, because an insufficient nexus existed between the Snap Chat video posting and 21 Clark's Corner.[15] For the forthcoming reasons, this Court disagrees.

The Constitution of the United States and the State of Delaware protects individuals, including probationers, from unreasonable searches and seizures.[16] Probation is a criminal sanction[17] however, and thus, probationers do not have the same liberties as ordinary citizens.[18] While Delaware probation officers are authorized to conduct searches of probationers,[19] probationers never "surrender all [ ] privacy rights" simply because they are on probation.[20] It has been long settled in Delaware that *suspicionless* searches of probationers are unlawful.[21] As a result, Delaware follows the "reasonable suspicion" standard in justifying searches of probationers.[22] "Reasonable suspicion" exists when the "totality of the

---

[15] D. Mot. at ¶¶ 10, 12.

[16] U.S. Const. Amend. IV, XIV; Del. Const. art I, § 6.

[17] *State v. Harris*, 734 A.2d 629, 634 (Del. Super. July 23, 1998).

[18] *State v. Riley*, 2018 WL 648037 at *2 (Del. Super. Jan. 16, 2018) citing *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008).

[19] 11 Del. C. § 4321(d).

[20] *King v. State*, 984 A.2d 1205, 1208 (Del. 2009) quoting *Sierra*, 958 A.2d at 832.

[21] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012), as corrected (July 10, 2012) citing *Sierra*, 958 A.2d at 829.

[22] *Id.*

circumstances" indicate a "particularized and objective basis" for suspecting a probationer of wrong doing.[23]

To ensure probationers' rights are protected, Probation adopted regulations governing searches of probationers.[24] A probation officer is deemed to have acted reasonably so long as they "substantial[ly] compl[y]" with regulations.[25]

a. *Porter's alleged failure to comply with 7.19*

Love first argues that Porter had insufficient reason to believe he possessed firearms and failed to comply with 7.19.[26] 7.19 provides guidelines to consider when determining the reasonableness of a probationer search including:

1) Sufficient reason to believe the offender possesses contraband;

2) Sufficient reason to believe the offender is in violation of probation/parole;

3) Information from a reliable informant, indicating offender possesses contraband or is violating the law;

4) Information from the informant is corroborated; and

5) Approval obtained from [a] Supervisor, Manager, or Director is granted.[27]

In this case, this Court finds Porter was not just in "substantial compliance"

---

[23] *Jacklin v. State*, 2011 WL 809684, at *2 (Del. 2011) (TABLE) citing *Sierra*, 958 A.2d at 828 quoting *United States v. Arizu*, 534 U.S. 266, 273 (2002).

[24] 11 Del. C. § 4321(d); *see also* Probation No. 7.19 (amended effective June 5, 2001).

[25] *Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).

[26] D. Mot. at 3.

[27] Probation No. 7.19.

with 7.19, but in full compliance. First, Porter testified under oath that he followed all protocols of 7.19.[28] Second, the evidence presented supports Porter's testimony and demonstrated he had sufficient reason to believe that Love possessed firearms, a probation violation. This belief was not based on any unsubstantiated and/or anonymous tip, but rather on Porter's knowledge and experience with firearms and probationers; coupled with Love's own admission of having "three straps." Third, Porter had suspicions regarding Love's negative home visit history that were heightened when he learned of Trice's disclosure to Melvin.[29] Finally, in accordance with 7.19, Porter obtained authorization from his supervisor prior to conducting a administrative warrant search at 21 Clark's Corner.[30]

Assuming arguendo, that Porter was not in full compliance with 7.19, that in itself is not fatal to the State's case. In *Pendleton*, our Supreme Court, finding an probation officer achieved "substantial compliance:" held:

> [ ]'s failure to complete the technical requirements does not negate the importance of his discussion of the five factors with [the supervisor]. Although he did not physically fill out the pre-search checklist, [ ]'s conduct fulfills the spirit of the guidelines. In analyzing the factors, rationally assessing the facts known to him, and obtaining supervisory approval, [ ] ensured that the Department of Corrections had sufficient

---

[28] Test. at 20.

[29] Trice's claim was verified in total by DELJIS, Harrington P.D., and Stevens.

[30] The 7.19 checklist had been completed in full by Porter.

grounds before searching Pendleton's home.[31]

Likewise in *Fuller*, our Supreme Court again held substantial, not full, compliance was sufficient.[32] The *Fuller* Court stated:

> [ ] purpose of [7.19] is to ensure that [Probation] has sufficient grounds before undertaking a search. The individual procedures advance that goal but are *not independently necessary*, as demonstrated by the fact that the regulations explicitly state exceptions for when the search checklist need not be used.[33]

Thus, this Court finds Porter fully complied with 7.19 and that the resulting administrative search of 21 Clark's Corner was lawful.

b. *Insufficient nexus - 21 Clark's Corner and Snap Chat posting*

Love next argues an insufficient nexus exists between the video posting and the search of 21 Clark's Corner.[34] Love contends that even if Porter had a reasonable belief that he possessed firearms, 21 Clark's Corner was not where the Snap Chat posting was created and additionally the search of 21 Clark's Corner took place 4 days after its posting, thus, creating the lack of nexus and an unlawful search.

---

[31] *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010).

[32] *Fuller*, 844 A.2d at 293.

[33] *Id.*

[34] D. Mot. at ¶ 12.

In support, Love relies upon *State v. Fax*[35] and *State v. Johnson*,[36] both cases involving administrative searches of probationers that resulted in this Court suppressing evidence due to a lack of nexus. Here, however, Love's reliance on those cases appears misplaced.

In *Fax*, a probationer tested positive for marijuana, yet was not cited for a violation of probation.[37] Fifteen days later, another probation officer discovered Fax's positive urinalysis and based an administrative search request solely on that failed test.[38] Probation officers searching Fax's home later found drugs, including cocaine and heroin.[39] In suppressing the evidence, this Court held that the fifteen day old failed urinalysis was not sufficient to establish reasonable suspicion to search Fax's residence, stating Fax's failed drug test alone fell below the indicia of reasonable suspicion.[40]

In *Johnson*, an anonymous email claimed that Johnson was selling drugs near his residence.[41] A probation officer, without conducing any additional investigation

---

[35] *State v. Fax*, 2017 WL 2418275 (Del. Super. June 2, 2017).

[36] *State v. Johnson*, 2014 WL 6661154 (Del Super. Oct. 30, 2014).

[37] *Fax*, 2014 WL 6661154, at *1.

[38] *Id.* at *1.

[39] *Id.* at *2.

[40] *Id.* at *4.

[41] *Johnson*, 2014 WL 6661154, at *1.

or consultation with Johnson's actual probation officer, searched DACS and confirmed Johnson had: (1) tested positive for marijuana; 92) missed curfew; (3) missed an office visit; and (4) failed to complete court-ordered behavioral treatment courses.[42] The *Johnson* court held the probation officer lacked reasonable suspicion to search Johnson's residence, as he failed to connect those uncharged violations with the search of the probationer's residence.[43]

In this case, Porter's information far exceeded that available in *Johnson* and *Fax*. Moreover, unlike in *Johnson*, where the inquiry began with an anonymous tip of drug dealing near Johnson's residence, Porter's investigation began with the Snap Chat posting of Love, in an open source social media page. Also, this is not an anonymous tip since it is tied to a known individual's user account.

Additionally, and unlike *Fax* and *Johnson*, Porter's conducted an investigation that uncovered or confirmed several probable probation violations before he sought the administrative warrant including the following:

1) Reviewed social media profiles and enlisted the SBI for identification;

2) Investigated and verified Love's residence discrepancy;

3) Verified the presence of Love's Expedition twice at 21 Clark's Corner within 48 hours;

4) Verified Love's utilization of the phone number associated with 21 Clark's

---

[42] *Johnson*, 2014 WL 6661154, at *1.

[43] *Id.* at *4.

Corner;

    5) Verified Love's presence at 21 Clark's Corner for at least three months;

    6) Verified Love's "no contact" order with Harris, the resident of record at 21 Clark's Corner; and

    7) Spoke with Love directly and was told Love had a key to 21 Clark's Corner. Porter still only sought an administrative search warrant per 7.19 when the search of Love's Expedition yielded only one of the weapons seen in the video posting and he reasonably concluded that the other two may be located at 21 Clark's Corner since it was clear that Love had been residing there for a period of time.

The facts here are clear and as a result this Court finds a sufficient nexus existed between 21 Clark's Corner and the Snap Chat posting and that Porter had reasonable suspicion to conduct a lawful search at 21 Clark's Corner.

## II. Consent to Search Love's Vehicle.

Love next argues that the search of his vehicle was unlawful and that evidence obtained should be suppressed. He contends that law enforcement conducted a warrantless search upon his vehicle while in custody and that the search did not meet the Automobile Exception standard for warrantless searches because officers did not observe any weapons in plain view, nor had they corroborated any information to suggest Love was in possession of contraband.

Love is correct in stating that the automobile exception to warrantless searches must be justified by probable cause and exigent circumstances.[44] This Court also

---

[44] D. Mot. at ¶ 18. *See also Schramm v. State*, 366 A.2d 1185, 1189 (Del. 1976).

agrees that there appear to be no exigent circumstances in the present case. However, Love's argument fails in two ways.

First, as discussed above, Porter had corroborated information that suggested that Love was in possession of firearms, a probation violation.

Second, police officers are not limited to plain view as justification for warrantless searches, but may also conduct searches and seizures based upon voluntary consent.[45] Our Supreme Court has stated that those in police custody can voluntarily consent, even though coercion is inherent in such custody.[46] Valid consent may be express or implied[47] and voluntariness is determined by the totality of the circumstances surrounding the consent, including (1) knowledge of the constitutional right to refuse consent; (2) age, intelligence, education, and language ability; (3) the degree to which the individual cooperates with police; and (4) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior.[48]

Here, the circumstances under which Love consented do not indicate an undue coercive atmosphere. It is true that Porter made contact with Love during his required

---

[45] *Cooke v. State*, 977 A.2d 803, 855 (Del. 2009) citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

[46] *Buckingham v. State*, 482 A.2d 327, 333 (Del. 1984) citing *Schaffer v. State*, 184 A.2d 689 (Del. 1962), cert. denied, 374 U.S. 834, (1963).

[47] *Cooke*, 977 A.2d at 855 citing *Schneckloth*, 412 U.S. at 241.

[48] *Id.*

meeting with his probation officer, a custody of sorts, but the visit was not extended unreasonably or otherwise.[49] During that time, Love fully cooperated with Porter and expressly verbalized consent to the search[50] as well as "provided the keys"[51] to the Expedition without protest. Additionally, Love is an adult with experience in the criminal justice system. This Court finds it difficult to believe that Love, with his knowledge of the criminal justice system, would not know he has the right to withhold consent, and make it necessary for Porter to seek a warrant.

Based on the above facts, this Court finds that the search of Love's Expedition was subject to his valid consent, and thus, lawful.

### III. Post Arrest Statement was lawful and did not violate Miranda.

Finally, Love argues his statement to law enforcement subsequent to arrest must be suppressed as fruit of the illegal search of 21 Clark's Corner.[52]

Since this Court determined the searches were lawful, there is no fruit of the poisonous tree.[53] Here, Love was read Miranda and had an absolute right to remain silent. Instead, he chose to speak. As a result, this Court sees no violation of Love's rights and no reason to suppress his statement.

---

[49] State Reply at ¶ 19.

[50] Test. at 30.

[51] Test. at 17.

[52] D. Mot. at ¶ 13.

[53] *Wong Sun v. United States*, 371 U.S. 471 (1963).

*State v. Ikeen L. Love*
I.D. No. 1802008471
September 27, 2018

## CONCLUSION

For the above stated reasons, Love's motion to suppress is *denied*.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

oc: Prothonotary
cc: Lindsay A. Taylor, Esquire
    Zachary A. George, Esquire

14